NOT DESIGNATED FOR PUBLICATION

No. 113,846

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT H. BOOKER, III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed September 16, 2016. Affirmed.

*Sam Schirer*, of the Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON and MCANANY, JJ.

*Per Curiam*: A jury convicted Robert H. Booker, III, of aggravated sexual battery. Booker appeals his conviction arguing the district court failed to rule on his pretrial motion to proceed pro se; and the district court erred in not ordering another competency evaluation on the first day of trial.

The State charged Booker with alternative counts of attempted rape and aggravated sexual battery. The district court appointed the Sedgwick County Public Defender Office to serve as Booker's counsel. On February 12, 2013, Booker filed a

1

motion to dismiss his attorney, Lacy Gilmour, and appoint a new attorney. On February 22, 2013, the court held a hearing on Booker's motion. Booker claimed Gilmour was involved in a conspiracy "to execute the extinction of [his] existence." Booker claimed the relationship between Gilmour and himself could not be mended due to her failure to properly represent him. Booker told the court he had been diagnosed with bipolar disorder and schizoaffective disorder, and he felt Gilmour should do more to help him get treatment. The court denied his motion.

On February 28, 2013, Booker filed another motion to dismiss Gilmour as his counsel. At a hearing on the motion on March 25, 2013, Booker claimed Gilmour had made continuances against his wishes and the two were unable to communicate. He again accused Gilmour of conspiring with the State. Gilmour noted that Booker's mental health condition had worsened since the last time she had seen him. The court ultimately granted Booker's motion.

Booker's next two appointed attorneys served as counsel for a short period of time. He filed a motion to dismiss one of these attorneys. On May, 28, 2013, the court appointed Kevin Loeffler as Booker's attorney.

On July 24, 2013, Loeffler filed a motion to determine Booker's competency. On July 25, 2013, over Booker's objection, the district court granted the motion and ordered COMCARE, a Sedgwick County mental health organization, to conduct a competency evaluation.

In an evaluation report dated August 7, 2013, Dr. Constance Gaston found Booker was competent to stand trial. The report noted Booker reported he had a prior diagnosis of bipolar disorder. His current diagnosis was "Unspecified Depressive Disorder with Schizoaffective Disorder." He sometimes heard voices when he was in a manic phase of his bipolar disorder. Booker had not taken psychotropic medication for 13 months but

had been able to "function well." Dr. Gaston concluded his difficulties with his attorneys "stem[med] more from different expectations regarding legal representation and the court process rather than from symptoms of untreated mental illness." Based on the report, the court found Booker competent and set a trial date.

On August 6, 2013, Booker filed a motion to dismiss Loeffler. At the hearing on his motion on September 20, 2013, Booker accused Loeffler of conspiring against him, adding:

> "I want it to be documented for the record, too, that I'm being set up for a modern-day institutionalized lynching. It doesn't matter. The powers above from Jehovah through his son Jesus Christ and Jehovah's Army are getting ready to oust this false government that you people succumb to and that you people have sold your souls to."

After a short recess, the court granted Booker's motion and dismissed Loeffler. The court appointed Steven Mank a week later.

On March 24, 2104, Booker filed a motion to dismiss Mank and asking the district court to allow him to represent himself. At the hearing on the motion, Booker reiterated his desire to represent himself. After a brief colloquy with Booker about why he wanted to dismiss Mank, the court asked for Mank's opinion. Mank told the court he had "serious concerns" about Booker's competency and suggested COMCARE evaluate Booker before the court allowed Booker to represent himself. After further discussion with Booker and Mank, the court ordered another competency evaluation. The court stated it would not rule on Booker's motion to dismiss Mank until it had addressed Booker's competency issues.

Dr. Gaston performed a second evaluation of Booker on April 25, 2014. She concluded that Booker was not competent to stand trial. His current diagnosis was

"Psychotic Disorder Not Specified and Mood Disorder Not Otherwise Specified." She noted that "[Booker] made grandiose and delusional statements about his legal status and his 'future.' He also stated his intentions to represent himself in court and described in detail how he would proceed." She later added that his plan for representing himself in court was "inappropriate," and "[h]is expectations for the outcome of his trial were not realistic."

The district court held a competency hearing on April 29, 2014. Booker declared he was his own counsel and he was competent to stand trial. Based on Dr. Gaston's evaluation, however, the court found Booker was not competent and ordered further evaluation and treatment at Larned State Hospital.

On October 6, 2014, Dr. Steven Walters completed a Larned evaluation report. Dr. Walters diagnosed Booker with "Bipolar I Disorder, Most Recent Episode Manic, Moderate, With Mood Congruent Psychotic Features." Booker's medications included Depakote for mood stabilization and Zyprexa Zydis for psychosis. Dr. Walters concluded Booker was competent to understand the nature of the charges against him and possessed the basic and fundamental capacity to participate in his own defense. Dr. Walter noted Booker had "scored above average on all competency scales of the competency test administered." He also observed that Booker's medication regimen likely helped in diminishing his symptoms and "recommended the current medication regimen remain in effect in order to maintain his competent state." On October 29, 2014, the court found Booker competent to stand trial based on Dr. Walters' report, and again set the case for trial.

Approximately 2 weeks later, on the morning of a scheduled jury trial, Mank again raised the issue of Booker's competency. Mank told the district that Booker had not been taking his medication. At Mank's request, the court ordered another COMCARE evaluation.

Dr. Gaston performed a third evaluation on Booker on November 20, 2014, and concluded Booker was competent to stand trial. She noted he had previously been diagnosed with "Schizoaffective Disorder Bipolar Type" but his current diagnosis was "Unspecified Depressive Disorder." She reported Booker had been prescribed Depakote and Zyprexa, but he had not been taking his medication since leaving Larned State Hospital. Nevertheless, Booker was not psychotic at the time of the evaluation. Based on this report, the district court found Booker competent on December 2, 2014, and again set a date for trial.

On December 20, 2014, Booker's case was set to for trial. Just before voir dire, Mank raised concerns about Booker's competency again. The deputy who had brought Booker to the courthouse, Ann Wenzel, had told Mank that Booker reported hearing voices.

The district court called Deputy Wenzel as a witness. She testified Booker asked her if the trial was going to go that day and she replied that it probably would. Booker told Deputy Wenzel he had not been taking his medication but had not told his attorney because he did not want his attorney to be mad at him. Deputy Wenzel told Booker he would be able to speak with his attorney soon. Booker then told her he had been hearing the voices of angels, was unable to concentrate, and had not been able to prepare for trial.

After Deputy Wenzel finished testifying, Mank noted on the record that Booker had been mumbling to himself during her entire testimony. He also emphasized that Booker had not been taking his medication, and Dr. Walter's report had recommended Booker do so to stay competent.

After reviewing Dr. Gaston's most recent evaluation, the district court declined to order another competency evaluation. The court noted that Dr. Gaston had evaluated

5

Booker approximately 1 month before when he was not on medication and found him competent. The court also observed that Booker had not had any problems "until the eve of trial." To the court, this suggested Booker was simply trying to delay the proceedings and "there [was] no mental health issue in terms of competency."

The jury convicted Booker of aggravated sexual battery. After releasing the jury, the district judge stated:

> "At the very beginning of trial yesterday, we had a competency hearing. During that competency hearing that took place in the law library the defendant was muttering and talking under his breath continually, rocking back and forth in his chair, not making eye contact with the participants; however as soon as he got in the courtroom and the trial began, the defendant's demeanor drastically changed.
>
> "He acted throughout this proceeding in an appropriate manner, he was making eye contact with the witnesses, attorneys, the participants, there was no muttering, no talking under his breath, as he had been doing before, no rocking back and forth. He has shown himself to be attentive, engaged and focused on these proceedings and the witnesses.
>
> "I would periodically note him quietly and appropriately talking and discussing matters with his attorney and observed him from time to time going through paperwork. He comported himself absolutely normal during the trial phase.
>
> "There's absolutely no question in my mind that the defendant is competent, that he understands, understood the nature of the proceedings against him and to assist in making his defense."

The district court sentenced Booker to 55 months in prison with lifetime postrelease supervision. Booker appeals.

Booker first argues he unequivocally invoked his right to self-representation and the district court erred in never addressing his request. The State argues the court did in fact address Booker's motion. Furthermore, because Booker was incompetent at the time

he made the request, there was no need for the court to issue a formal ruling on his motion.

The extent of the right to assistance of counsel is a question of law subject to de novo review. *State v. Jones*, 290 Kan. 373, 376, 228 P.3d 394 (2010).

Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to defend himself or herself at trial. A criminal defendant also has the right to self-representation if an unequivocal request to proceed pro se is accompanied by a knowing and intelligent waiver of the right to counsel. *Jones*, 290 Kan. at 376. Because of the importance of the right to counsel and the loss of the fundamental rights accompanying a waiver of that right, an appellate court must indulge every reasonable presumption against finding a waiver of the right to counsel and will not presume mere acquiescence in the loss of such a fundamental right. *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006).

The right to self-representation is not absolute. A court may deny a defendant the right for a number of reasons, including incompetency. See *Godinez v. Moran*, 509 U.S. 389, 396, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) ("A criminal defendant may not be tried unless he is competent . . . and he may not waive his right to counsel . . . unless he does so 'competently and intelligently.'"). In order to be competent enough to proceed pro se, a defendant must at least be competent enough to stand trial. See *Indiana v. Edwards*, 554 U.S. 164, 178, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008).

Booker claims the district court did not properly address his request to represent himself, and his case is materially indistinguishable from *Vann*. Vann filed a number of pretrial pro se motions, including a motion to proceed pro se. The district court did not address the motions before trial, and he did not remind the court that he had filed a motion to represent himself until after the jury had reached a verdict. Our Supreme Court

7

found that once Van clearly and unequivocally invoked the right to self-representation, he did not need to reassert the right to keep from waiving it. 280 Kan. at 795. Because the district court failed to address Vann's pretrial motion to proceed pro se, the Supreme Court reversed his conviction and remanded the case for a new trial. 280 Kan. at 795.

Contrary to Booker's assertion, his case is distinguishable from *Vann*. For one, the district court in *Vann* failed to address Vann's motion to proceed pro se at all. In the present case, the district court held a hearing on Booker's motion to dismiss his attorney and proceed pro se. At this hearing, the court questioned Booker regarding the problems he had with Mank. More importantly, though, Vann's competency was not at issue in *Vann*. This has significant consequences for how a district court addresses a defendant's motion to proceed pro se.

The facts of this case are closer to *United State v. Boigegrain*, 155 F.3d 1181 (10th Cir. 1998). In *Boigegrain*, the defendant filed a pro se motion to have his federal public defender dismissed, but the court did not release the public defender. Approximately a week later, the public defender moved for a determination of the defendant's competency to stand trial. Due to the defendant's numerous failures to show up for appointments and court dates, the competency hearing did not take place until 5 months later. At the hearing, the court explained that despite the defendant's right to waive counsel and proceed pro se, the court had not ruled on the motion because there was no way to determine if a defendant was competent to waive counsel until one determined if a defendant was competent to stand trial. The defendant was found incompetent to stand trial at the hearing, and he continued to be represented by counsel. The court later found him competent, and he entered into a plea agreement. The court appears to never have explicitly denied his motion to proceed pro se, but rather to simply have found the defendant incompetent to stand trial. Furthermore, when the defendant was later found competent, the court did not address his motion anew.

8

On appeal, the *Boigegrain* court found:

"[T]he court waited to rule on the defendant's motion to dismiss the public defender until the issue of the defendant's competency to stand trial had been resolved. That was the most appropriate course because '[l]ogically, the trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel.' *United States v. Purnett*, 910 F.2d 51, 55 (2d Cir.1990). Although that common sense statement almost resolves this matter on its own, a more recent case from the Supreme Court, *Godinez v. Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993), clarifies it completely. In *Godinez*, the Court held that the degree of competence necessary to waive the right to counsel is identical to the degree of competence necessary to stand trial. . . . Therefore, it was impossible for the district court to allow the defendant to waive counsel before determining whether he was competent to stand trial. Before resolving the first question, the court had to resolve the second." 155 F.3d at 1186.

Similarly, in *Hauck v. State*, 2001 WY 119, 36 P.3d 597 (2001), a defendant requested to proceed pro se at a competency hearing. The district court summarily denied his request. The court later found the defendant competent but did not readdress his request to proceed pro se. On appeal, the defendant claimed the court had erred in denying his request without a hearing. The Supreme Court of Wyoming upheld the district court's denial, noting it would have been a "logical impossibility" to "[find] his self-representation request knowing and intelligent before his competency was determined or once he was found incompetent." 36 P.3d at 602.

In the present case, Booker unequivocally invoked his right to proceed pro se by filing a motion. At the hearing on his motion, he reiterated his desire to represent himself. At this same hearing, however, Mank raised concerns about Booker's competency. The court could not rule on Booker's motion to proceed pro se without first establishing his competency. Booker was later found incompetent to stand trial. Since the standard for competency to stand trial is the same or lower than the standard of competency to waive

9

the right to counsel, Booker was also not competent to waive his right to counsel and proceed pro se. While the court did not explicitly rule on his motion, the finding that Booker was not competent to stand trial effectively denied his motion. Even if the court had addressed Booker's motion, the only possible action it could take was to deny it. Furthermore, when the court later found Booker competent, he did not renew his motion to proceed pro se.

Admittedly, our Supreme Court has held that once a defendant had invoked the right to self-representation, he or she does not need to reassert that right to avoid waiver. This is true when a request to proceed pro se has been conclusively denied or even when the defendant may believe it has been denied based on the court's actions. *State v. Lowe*, 18 Kan. App. 2d 72, 78, 847 P.2d 1334 (1993). What would distinguish Booker's case is that at the time he made his request, he was not competent to do so. Thus, Booker could reasonably be expected to reassert his right once he was found competent.

Additionally, the right to self-representation is not absolute and courts should presume against waiver of the right to counsel. Given this presumption and Booker's incompetence, the district court's failure to explicitly rule on his request to proceed pro se was not error. Instead, the court's finding that Booker was not competent to stand trial was sufficient to establish that he could not invoke his right to self-representation, at least at that time.

Booker also argues a reasonable judge would have doubted his competency to stand trial, thus, the district court erred in not ordering another competency evaluation. Booker contends his long history of mental illness and his failure to take medication should have indicated to the court that his competency was in question. He claimed he had begun hearing voices the morning of trial. Faced with this evidence, Booker believes the court abused its discretion in not ordering another competency evaluation.

The State argues the district court did not err in proceeding to trial rather than ordering another competency evaluation. The State points out that Booker's competency had been evaluated a month prior, and he had been found competent to stand trial. The only new condition that Booker claimed was auditory hallucinations. The court, however, made specific findings that Booker's claims of hallucinations were an attempt to delay trial. The State contends the court made a reasonable decision not to order another competency evaluation based on observation and thus did not abuse its discretion.

Traditionally, a district court's decision on whether to order an additional competency hearing is reviewed for an abuse of discretion. *State v. Perkins*, 248 Kan. 760, 769, 811 P.2d 1142 (1991). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

Booker acknowledges that abuse of discretion is the traditional standard of review for this issue but suggests recent Kansas Supreme Court caselaw establishes the standard of review should be de novo. He cites to *State v. Woods*, 301 Kan. 852, 348 P.3d 583 (2015). In *Woods*, the defendant brought two claims: (1) his pretrial competency hearing was inadequate; and (2) the district court should have moved *sua sponte* to hold a second competency hearing. As Booker notes in his brief, the *Woods* court explicitly reviewed the defendant's second challenge under an abuse of discretion standard. 301 Kan. at 860. The analysis of defendant's first claim, though, appeared to be de novo. Booker suggests the de novo standard is more sensible for these types of claims.

Booker's argument is without merit. First, the first claim in *Woods* required our Supreme Court to determine if the district court's actions had complied with a statute. This is a question of law not amenable to an abuse of discretion standard. Thus, the use of a different standard was out of necessity, not a desire to change the overall standard of review.

11

Second, the *Woods* court explicitly used an abuse of discretion standard when reviewing the defendant's claim that the district court should have ordered another competency evaluation. If the *Woods* court wanted to change the standard of review for such claims, then it could have done so, but it did not. Thus, Booker's claim will be reviewed using an abuse of discretion standard.

In Kansas, a defendant is incompetent to stand trial if "he [or she] is charged with a crime and, because of mental illness or defect is unable: (a) To understand the nature and purpose of the proceedings against him [or her]; or (b) to make or assist in making his [or her] defense." K.S.A. 22-3301(1); accord *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) ("[The t]est must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has rational as well as factual understanding of the proceedings against him.").

The procedure for determining competency is outlined in K.S.A. 2015 Supp. 22-3302, which states:

> "(1) At any time after the defendant has been charged with a crime and before pronouncement of sentence, the defendant, the defendant's counsel or the prosecuting attorney may request a determination of the defendant's competency to stand trial. If, upon the request of either party or upon the judge's own knowledge and observation, the judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial the proceedings shall be suspended and a hearing conducted to determine the competency of the defendant."

A district court may also order a psychiatric or psychological examination of the defendant. K.S.A. 2015 Supp. 22-3302(3).

12

There are two types of competency claims—substantive and procedural. In a substantive competency claim, the defendant alleges he or she was tried and convicted while incompetent. In a procedural competency claim, the defendant alleges the trial court failed to hold a competency hearing or failed to hold an adequate competency hearing. *State v. Woods*, 301 Kan. 852, 858, 348 P.3d 583 (2015) (citing *McGregor v. Gibson*, 248 F.3d 946, 952 [10th Cir. 2001]).

Booker raises a procedural competency claim. He argues the district court should have ordered a fifth competency evaluation prior to proceeding to trial. His argument rests on the assertion that "plain evidence" showed "[his] mental health tended to deteriorate when he was not medicated, and a month of nonmedication had passed since his most recent Comcare evaluation." In support of this assertion, Booker points out he had a history of mental illness. After prolonged periods of nonmedication, his mental health condition tended to worsen but improved when placed back on a medication regime. According to Booker, Dr. Walters had noted Booker needed to take medicine to stay competent. Finally, Booker claimed to be hearing angelic voices shortly before trial.

The record clearly establishes that Booker had mental health issues. The existence or nonexistence of mental health issues is not the standard for competency to stand trial, however. The standard is the defendant's ability to understand the nature of the proceedings against him or her and the ability to assist in his or her defense.

In the present case, the district court reviewed Dr. Gaston's evaluation of Booker from 1 month prior and found Booker competent to stand trial. The court noted his diagnosis was depressive disorder with schizoaffective disorder, bipolar type. Booker was able to communicate appropriately and was oriented as to date and time. He indicated he had experienced hallucinations and psychotic symptoms in the past but not for a long time. He showed an understanding of the charges against him and the criminal trial process. The court also noted that Booker was not on medication at the time of the report,

13

and Dr. Gaston had not concluded that Booker needed to be on medication to be or stay competent. Based on this evaluation, Booker met the standard for competency to stand trial.

The only changes in Booker's symptoms or behavior were that he claimed to hear angelic voices; and he was muttering to himself in the courtroom. As for the hallucinations, the court found Booker had no indications of problems with hallucinations until shortly before trial. The court additionally found the hallucinations were an attempt to delay trial, and not a "mental health issue in terms of competency." Even if Booker was experiencing hallucinations, that alone does not establish he was incompetent. See *State v. Edwards*, No. 106,278, 2012 WL 6061554, at *5 (Kan. App. 2012) (unpublished opinion) (finding defendant possibly experiencing hallucinations not enough to warrant finding of incompetency). Booker did not demonstrate any signs of confusion about the proceedings and did not appear to be having communication problems.

The district court did not specifically address Booker's muttering. Booker's behavior was similar to the defendant's in *State v. Harkness*, 252 Kan. 510, 516, 847 P.2d 1191 (1993). In *Harkness*, the defendant brought a claim that the district court should have ordered a competency evaluation *sua sponte* based on defendant's behavior in court, which included: attacking a court reporter, showing confusion, having difficulty making decisions, and twiddling his thumbs. Our Supreme Court rejected the defendant's argument, noting these behaviors were not necessarily signs of incompetency and had other plausible explanations. 252 Kan. at 516. Similarly, muttering to oneself is not necessarily a sign of incompetency, but could be the result of anger, boredom, or a number of other causes.

Booker also argues the district court erred in finding he was attempting to delay the proceedings as part of its competency determination. Booker is correct that a malingering defendant is not necessarily competent. A district court, however, may

14

consider whether a defendant's actions are or appear to be volitional in determining whether he or she is competent to stand trial. *State v. Barnes*, 263 Kan. 249, 948 P.2d 627 (1997) (upholding district court's decision that defendant was competent and any expressed confusion over trial process was result of malingering); *State v. Perkins*, 248 Kan. 760, 811 P.2d 1142 (1991) (finding district court did not abuse its discretion in finding defendant was competent and disruptive behavior was volitional). Admittedly, in *Barnes* and *Perkins*, competency evaluations supported the courts' decisions that the defendants' behaviors were intentional. *Barnes*, 263 Kan. at 258-59; *Perkins*, 248 Kan. at 769. In this case, Booker's evaluations do not suggest he would intentionally try to delay trial. On the other hand, the court's competency determination rested primarily on Booker's final evaluation and did not "hinge" on the court's assessment of his hallucinations. Additionally, the timing of Booker's hallucinations supports the court's conclusions that they were intended as a stall tactic.

As for the district court's comments regarding Booker's behavior at trial, events that occur after a competency hearing are irrelevant to a determination of whether a court abused its discretion in finding a defendant competent to stand trial. *Woods*, 301 Kan. at 861. Based on the evidence available to the court at the time, however, the court did not abuse its discretion. Dr. Gaston had found Booker competent to stand trial a month prior to the first day of trial. Although he was not on medication at the start of trial, he had also not been on medication at the time he was found competent. The competency evaluation demonstrated Booker had the ability to understand the nature of the proceedings and assist in his defense. While he may possibly have developed hallucinations the morning of the trial, nothing suggested these hallucinations rendered him legally incompetent. Furthermore, the timing of the hallucinations suggested Booker was attempting to delay the proceedings. Because a reasonable person could agree with the court's findings, the court did not abuse its discretion and it did not err in refusing to order another competency evaluation.

15

In conclusion, while Booker unequivocally invoked his right to proceed pro se, he was incompetent at the time he did so. Because his competency was at issue at the time he brought the motion, and he was later found incompetent to stand trial, his motion for self-representation was effectively denied. Furthermore, before the start of trial, Booker had been found competent, and a reasonable person could agree that Booker did not exhibit any new conditions which would cause a reasonable person to believe he was no longer competent. Thus, the district court did not err by not ordering another competency evaluation.

Affirmed.