Buser, J.,
dissenting: While I share my colleagues’ view that judges' should be attentive during judicial proceedings, I dissent from the majority opinion for four reasons. First, the majority’s holding that a judge who nods off during a criminal jury trial necessarily commits structural error is without precedent in Kansas statutoiy law or caselaw. Indeed, precedent from analogous cases in Kansas and other jurisdictions generally requires a showing of prejudice before a verdict may be overturned due to a sleeping judge. Second, my independent review of the trial proceedings convinces me that Daquantrius S. Johnson was not prejudiced as a result of inattentiveness by the trial judge. Moreover, if there was any prejudice, it was removed or mitigated by the trial judges handling of the matter. Third, K.S.A. 22-3423, which establishes a procedure for declaring mistrials (which defense counsel specifically waived in this case), would have afforded Johnson ample protection if the trial judge’s inattentiveness had resulted in prejudice that denied Johnson his constitutional right to a jury trial. Finally, *747 defense counsels refusal of the trial judges invitation to move for a mistrial under the circumstances was invited error.
For all of these reasons, I would find no reversible error on the part of the trial judge and affirm Johnsons convictions.
Factual Summary
The jury trial began on October 27, 2014. In the morning, the trial judge and prosecutor conducted voir dire of prospective jurors. After the lunch recess, the afternoon session began at 1:30 p.m. with the prosecutor continuing his voir dire, followed by defense counsels voir dire. Both the prosecutor and defense counsel passed the juiy venire for cause. Of note, during the afternoon voir dire there were no objections made by either counsel and, as a result, no rulings were sought by counsel or made by the trial court.
After the jury venire was passed for cause, the trial judge spoke with those individuals who were not selected for questioning and directed them to the juiy assembly room. The trial judge then presided over the parties’ peremptory challenges. At the conclusion of this process, the trial judge seated the jurors and recessed the trial at 3.T5 p.m. for 15 minutes. During this recess, the trial judge had an extended discussion with both counsel regarding the preliminary instructions he intended to give the jurors upon their return to the courtroom. Additionally, the trial judge and defense counsel discussed an evidentiary stipulation.
Upon the jurors’ return from the recess, they were sworn and the trial judge provided them with lengthy preliminary juiy instructions which comprised 14 pages of the trial transcript. Both counsel presented brief opening statements. There were no objections raised during these presentations and no rulings by the trial judge. The State’s first witness, Randall Gifford, was the complaining witness in the case. During direct examination, the State offered several exhibits into evidence and on each occasion the trial judge ruled on their admissibility. During cross-examination, the prosecutor raised only one relevance objection to defense counsel’s question which was promptly sustained by the trial judge. At the conclusion of Gifford’s testimony the trial judge recessed the proceedings for the day.
*748 The next morning, tire following proceedings took place in the courtroom:
“THE COURT: Good morning.
“THE JURY: Good morning.
“THE COURT: Ladies and gentlemen, I believe we’re ready to get underway on this matter. Before we do that, though, Aere’s something Aat I want to bring out and discuss, and that is earlier this morning one of Ae jury members pulled Christine aside and made the observation Aat during Ae course of Ae proceeding in the trial yesterday afternoon I may have been sleeping or nodding off, and the question was raised whether or not Mr. Johnson then could have a fair trial. Christine, I think, explained to the juror Aat raised Aat issue Aat you are Ae trier of facts and at Ae conclusion of the case you are Ae ones Aat decide all Ae factual issues and reach a determination as to wheAer or not Mr. Johnson is guilty or not guilty and wheAer or not the case has been proven, and Aat is a correct assessment of Ae matter.
"As I mentioned to you yesterday in my very preliminary instructions, Ae role of Ae judge and the jury are different. You are the trier of facts. I decide what evidence you will hear and what instructions you will receive. I don’t believe during the course of Ais trial yesterday afternoon there were any objections raised Aat I had to make rulings on Aat would have been affected by my nodAng off. I acknowledge myself, ladies and gentlemen, Aat I Ad nod off some. I doubt Aat I’m the first judge in America that’s ever done Aat.
“And I want to also just observe the fact that I think I mentioned to you actually I graduated from law school in December of 1971, almost 43 years ago. I’ve probably been involved in as many as 300 juiy trials, and over the course of my career I’ve learned and have gained a great deal of respect for our jury system. I recognize fully that many people—as I inAcated in our informal Ascussions yesterday morning, many people when they get a jury summons the first reaction is, golly, why do I have to do this, and yet at Ae same time in my 43 years of experience most jurors I find are very conscientious about their role and their responsibility. They take their job seriously. And, quite honestly, I’m glad that Ais matter was brought out in the open so that it can be dealt with.
“In that regard, Ae defendant, of course, is the one who’s affected and is Ae one who is entitled to have a fair trial. Obviously the State is entitled to have a fair trial also. It is a constitutional right for Ae defendant to be given a fair trial. So Ae question is whether or not the defendant now wants to make motion for a mistrial based on Ais conduct. So, Mr. Beall, is it your wish to request a mistrial?
“MR. BEALL: Not at Ais time. We’re ready to proceed.
“THE COURT: Very well. With that then we’ll proceed on. Mr. Roush, you may call your next witness.
“MS. HART: Your Honor, Ae State calls Kayla Wilson.
“THE COURT: And I’ll try to do better.”
It is against this factual background that the first question is *749 presented: Was the trial judge’s nodding off during the afternoon session a structural error that defies analysis by harmless-error standards because it affected the framework within which the trial proceeds? See State v. Jones, 290 Kan. 373, Syl. ¶ 7, 228 P.3d 394 (2010).
Structural Error
In holding that “[i]t is structural error for a trial judge to sleep during a criminal trial,” my colleagues do not cite any on-point Kansas precedent to support their novel proposition. 53 Kan. App. 2d 734, Syl ¶ 1. Indeed, my colleagues’ legal contention is a brand new statement of Kansas law. Additionally, the majority opinion does not cite any on-point precedent from other jurisdictions that have adopted the structural error model when a trial judge falls asleep during a criminal trial.
In contrast, my review of federal and other state jurisdictions provides examples where courts have specifically addressed the judicial somnolence issue and required some showing of prejudice prior to overturning a conviction in a criminal case. See United States v. White, 589 F.2d 1283 (5th Cir. 1979) (Defense was not impermissibly prejudiced when trial judge fell asleep during defense counsel’s opening statement.); Lampitok v. State, 817 N.E.2d 630, 640-41 (Ind. App. 2004) (No prejudice when trial judge slept during defense counsel’s closing argument and, as a result, did not rule on prosecutors objection.); United States v. Martinez, 97 Fed. Appx. 869, 872 (10th Cir. 2004) (unpublished opinion) (Defense was not disparaged when trial judge fell asleep during defense counsel’s cross-examination of coconspirator who testified as prosecution witness.); United States v. Barrios, No. 97-1364, 2000 WL 419940, at *2 (2d Cir. 2000) (unpublished opinion) (If trial judge had fallen asleep, that fact would not have been a basis for reversal absent prejudice.); United States v. Yanez-Baldenegro, No, 93-10538, 1994 WL 441757, at *3 (9th Cir. 1994) (unpublished opinion) (Defendant did not substantiate his claim of negative impact on the jury when trial judge fell asleep during defense counsel’s closing argument and “did not raise an objection at the point when any prejudice could have been cured.”); Robinson v. Com., No. *750 2003-CA-002424-MR, 2006 WL 891059, at *4 (Ky. App. 2006) (unpublished opinion) (No objections made or rulings sought while trial judge was sleeping and snoring during cross-examination of a witness.). In short, the majority’s structural error model contrasts with numerous other jurisdictions that generally require a showing of prejudice in order to reverse a defendants conviction under circumstances where a trial judge falls asleep during a criminal trial.
The majority’s new holding pertaining to criminal jury trials also contrasts with Kansas precedent which provides that in civil jury trials judicial somnolence is not a question of structural error, but requires a showing of prejudice before a verdict may be overturned. This established Kansas precedent should control in this criminal case.
The majority cites two Kansas civil cases, Ettus v. Orkin Exterminating Co., Inc., 233 Kan. 555, 565, 665 P.2d 730 (1983), and Fiechter v. Fiechter, 97 Kan. 166, 155 P. 42 (1916), and candidly concedes that both cases “require some showing of prejudice before reversing when a judge is absent or asleep.” 53 Kan. App. 2d at 739. Ettus, which relates to a sleeping judge, is especially probative:
“In its other claim of misconduct by the court, Orkin alleges the trial judge fell asleep and thereby lost control of the trial. Orkin argues this is grounds for a new trial.... In Feichter we said only a slight showing of prejudice would he necessary to authorize a reversal. In the instant case the record made during trial does not support the allegations although an affidavit from one of the jurors indicates she thought the judge appeared, in at least one instance, to be asleep. In ruling on the point in Orldn’s motion for new trial, the judge said he did not recall dozing off at anytime during the long trial. The court also pointed out that at no-time during the trial did counsel claim the court was inattentive, or bring any such claim to its attention. When the court did miss the tenor of an objection, it had the reporters read-back available to it. Assuming there was a credible showing of misconduct by the court, no prejudice has been shown and the mere possibility of prejudice is not sufficient to overturn a verdict.” (Emphasis added.) 233 Kan. at 565.- ■
Ettus is instructive because it demonstrates how Kansas precedent has addressed the serious matter of judicial somnolence to insure the fundamental tights of civil litigants.
Given the close parallels between Ettus and the present case, I believe we should follow this precedent rather than embark on a *751 new structural error model to address trial judges who may be inattentive during criminal trials. Similar to the present case, in Ettus, a juror noticed the trial judge nodding off but counsel never asserted the judge was inattentive or raised the issue during trial, and the requisite prejudice was not shown. Accordingly, our Supreme Court held no reversal of the verdict was necessary. See Ettus, 233 Kan. at 571. And if reversal of the verdict was not justified in Et-tus, then given the additional facts of the present case, a reversal of Johnson’s convictions is surely unwarranted here.
Unlike Ettus, Johnsons defense counsel not only waived his right to move for a mistrial, he waited to raise the somnolence issue for the first time on appeal. Additionally, unlike Ettus, in this case the trial judge sua sponte raised the issue during trial and advised the juiy that he believed the matter was important to Johnson because the defendant had a constitutional right to a fair trial. In this way, unlike Ettus, the trial judges admonition removed or mitigated any potential prejudice the trial judges inattentiveness may have caused Johnson. See State v. Harris, 297 Kan. 1076, Syl. ¶ 5, 306 P.3d 282 (2013). Ettus provides valuable precedent that prejudice to a litigant should be shown prior to the reversal of a jury’s verdict because of claimed judicial inattentiveness.
Lastly, Kansas law also requires a showing of prejudice in the analogous case of a sleeping juror. See State v. Kirby, 272 Kan. 1170, 1196, 39 P.3d 1 (2002) (“A trial court abuses its discretion when it denies a motion for a new trial based on juror misconduct if the defendant can show that [1] an act of the jury constituted misconduct and [2] the misconduct substantially prejudiced the defendant’s right to a fair trial.”). Moreover, because a judge who sleeps during trial implicates the issue of judicial misconduct, it is noteworthy that in judicial misconduct cases, proof of prejudice is also required. See State v. Hayden, 281 Kan. 112, Syl. ¶ 1, 130 P.3d 24 (2006) (“In order to warrant a new trial, it must affirmatively appear that the conduct prejudiced the substantial rights of the complaining party.”); State v. Miller, 274 Kan. 113, Syl. ¶ 3, 49 P.3d 458 (2002) (“The party alleging judicial misconduct bears the burden of showing his or her substantial rights were prejudiced.”).
In summary, Kansas law has not adopted the structural error *752 standard in cases of a judge sleeping during a civil juiy trial, a juror sleeping during a criminal jury trial, or a judge engaging in misconduct during a criminal trial. Given these analogous circumstances where some showing of prejudice is required prior to overturning a jury’s verdict, I believe it is unnecessary and unwise to establish a separate structural error standard for judges who may be inattentive during a criminal jury trial.
Prejudice Analysis
My colleagues argue that the circumstances of this case “make it difficult to assess prejudice if we do not rule this to be structural error.” 53 Kan. App. 2d at 741. I disagree. The lack of. prejudice was clearly discernable in Ettus. In the present case, the lack of prejudice is also readily ascertainable and apparent.
As detailed in the factual background, it is evident that the trial proceedings in the afternoon were unremarkable and conducted in accordance with Kansas criminal procedure. During the afternoon session, the trial judge supervised tire voir dire (K.S.A. 22-3408[3]); was present to rule on any challenges for cause (K.S.A. 22-3410[l]); oversaw the parties’ peremptory challenges (K.S.A. 2016 Supp. 22-3412); engaged in an in camera discussion with counsel about legal matters; administered the oath to the jurors to try die case (K.S.A. 2016 Supp. 22-3412[a][2][I],[b]); gave the jurors lengthy and detailed instructions on the law and, in particular, advised them about the elements of the crimes for which Johnson was charged (K.S.A. 2016 Supp. 22-3414J3]); and oversaw the parties’ opening statements and witness testimony (K.S.A. 2016 Supp. 22-3414[l]). While the trial judge was engaged in these judicial duties there were no objections, complaints, or mention by either counsel about inattentiveness, improper rulings, or irregular proceedings.
The majority’s suggestion that the trial’s structure or framework was adversely affected in this case is belied by reading the transcript of the afternoon session. My independent review persuades me that the regular order of trial as mandated by Kansas criminal procedure was followed, and the trial judge was sufficiently attentive that no error or irregularity is apparent in counsel’s voir dire, the parties’ passing the jury for cause, the handling of tire parties’ *753 peremptory challenges, the administration of the oath to jurors, the trial judges lengthy and detailed preliminary jury instructions, the parties’ opening statements, and testimony by the State’s complaining witness. If there had been any abnormalities in the trial judges handling of the trial that potentially prejudiced Johnson’s constitutional rights, the record is bereft of any evidence of it. In all respects, the trial judges handling of the trial proceedings complied with Kansas law and procedure.
I acknowledge that the record on appeal does not contain additional facts which would have been helpful in the determination of whether—and if so, to what extent—the trial judge was inattentive and whether Johnson was prejudiced as a result. But who is responsible for the lack of a trial court ruling and the absence of a complete record? The answer is obvious.
Defense counsel’s decision to waive any objection at trial to die claimed inattentiveness and to refuse the trial judge’s invitation to pursue the matter by making a motion for mistrial was consequential. As a result, defense counsel failed to offer any evidence, make a proffer, present legal argument, or obtain a ruling regarding whether a fundamental failure of the proceedings had prejudiced Johnson’s constitutional rights. Defense counsel’s waiver short-circuited the fact finding which could have provided additional information by which the trial judge and our appellate court could have evaluated whether an error occurred and whether Johnson was prejudiced as a result.
K.S.A. 22-3423
Kansas law provides an excellent mechanism for determining if a trial judge has erred by nodding off during trial and evaluating if the error is reversible or harmless. K.S.A. 22-3423 affords a criminal defendant or litigant a prompt and effective procedure for addressing and remedying trial errors which adversely affect an individual’s constitutional rights. In relevant part,.the statute provides:
“The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:
“(a) It is physically impossible to proceed with trial in conformity with law; or
“(b) There is a legal defect in the proceedings which would malee any judgment entered upon a verdict reversible as a matter of law and the defendant requests or *754 consents to the declaration of a mistrial; or
“(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution.” K.S.A. 22-3423(1).
Over the years, K.S.A. 22-3423 has been a particularly well-suited procedure to evaluate and rectify potentially serious trial ^regularities in criminal cases. See State v. Leaper, 291 Kan. 89, 95-106, 238 P.3d 266 (2010) (Kansas Supreme Court found trial judge erred in failing to investigate claim that juror saw defense witness remove item of evidence from courtroom, but held it was harmless error.); see also State v. Hayes, 270 Kan. 535, 540, 17 P.3d 317 (2001) (Kansas Supreme Court found a violation of defendants constitutional rights to a fair and impartial jury because the trial judge denied a mistrial upon discovery that a hearing-impaired juror had not heard any of defendant’s testimony.).
In the context of K.S.A. 22-3423(l)(c), which seems especially applicable to the facts and circumstances of this case, our Supreme Court has articulated the appropriate analysis a trial judge should employ in assessing whether a mistrial should be declared:
“K.S.A. 22-3423(l)(c) permits a trial court to declare a mistrial if there was prejudicial conduct inside or outside the courtroom that makes it impossible to proceed without injustice to a defendant or the prosecution. To follow the statute, a trial court must engage in a two-step analysis. It must (a) decide whether there was some fundamental failure of the proceeding, and (b) if so, determine whether it is possible to continue without an injustice. This second step requires assessing whether the damaging effect of any prejudicial conduct may be removed or mitigated through an admonition, jury instruction, or other action. If that is not possible because the degree of prejudice would result in an injustice, a mistrial is necessary.” Harris, 297 Kan. 1076, Syl. ¶ 3.
In the case on appeal, defense counsel’s oral motion to invoice the provisions of K.S.A. 22-3423(l)(c) would have afforded Johnson a quick and efficacious procedure to protect his fundamental constitutional rights. For example, the concerned juror could have been interviewed by the trial judge and counsel, out of the presence of other jurors, and asked on how many occasions and for what length of time he noticed the trial judge sleeping during any particular portion(s) of the afternoon session. Similarly, the prosecutor, defense counsel, bailiff, court deputy, or Johnson himself, *755 given their presence in the courtroom, may have provided relevant information to either confirm or contradict the jurors observations and provide their own assessment of the trial judge’s attentiveness. In short, had defense counsel simply availed his client of the protections afforded criminal defendants by K.S.A. 22-3423(l)(c), rather than waiving those protections, the trial judge and our court could have more fully analyzed whether Johnson’s constitutional rights were violated.
Still, despite defense counsel’s waiver of the motion for mistri- , al, the trial judge’s sua sponte actions upon learning of the juror’s concern were in conformance with the two-step analysis provided in K.S.A. 22-3423(l)(c). See 297 Kan. 1076, Syl. ¶ 3. First, in the presence of the jury, the trial judge forthrightly acknowledged that he may have fallen asleep or nodded .off sometime during the afternoon session. Second, the trial judge recognized that, as a result, at least one juror had expressed concern about whether Johnson could receive a fair trial. Third, the trial judge explained that he did not believe his conduct affected the trial proceedings. Fourth, the trial judge spoke approvingly of tire jury system and his belief that jurors take their responsibility very seriously which, he implied, resulted in one juror speaking out. Fifth, the trial judge underscored that the critical issue was whether Johnsons constitutional right to a fair trial toas affected. Sixth, in the presence of the jury, the trial judge specifically offered defense counsel the opportunity to remedy any error by moving for a mistrial. Finally, the trial judge pledged to “try to do better.” Consistent with the prophylactic purpose of K.S.A. 22-3423, while the trial judge may have erred by being inattentive, he promptly and appropriately took steps to remove or mitigate any prejudice to Johnson.
Invited Error
Finally, since the trial judge’s inattentiveness was not structural error, I would also affirm Johnson’s convictions because, as acknowledged by.my colleagues, a litigant generally may not invite error and then complain of the error on appeal. State v. Verser, 299 Kan. 776, 784, 326 P.3d 1046 (2014); 53 Kan. App. 2d at 736.
*756 In Verser, a States witness admitted on cross-examination and redirect examination that he had lied while testifying during his direct examination. The State moved to strike the testimony and the defense sought a mistrial. Following a recess to allow defense counsel to consult with Verser, however, defense counsel withdrew his motion for mistrial. The State then sought a mistrial which prompted another recess. Upon tire trial judges return to the courtroom, he indicated that he was inclined to grant a mistrial if Verser wanted one. After a brief discussion with Verser, however, defense counsel declined the offer, the trial judge denied the State’s motion for mistrial, and the trial resumed with the defendant subsequently convicted of first-degree murder and criminal possession of a firearm.
For the first time on appeal, Verser argued that the fabricated testimony by the State s witness constituted a fundamental failure of the proceedings which necessitated the declaration of a mistrial. Similar to the present case, Verser claimed this irregularity violated his right to a fair trial and constituted structural error which precluded the State from arguing the invited error doctrine.
Our Supreme Court declined to find structural error, noting that few constitutional errors “qualify for the ‘structural’ label.” 299 Kan. at 784. The court then analyzed whether the trial courts decision overruling the motion for mistrial was invited error:
“Verser’s decision to proceed did not result in an unavoidable miscarriage of justice; it enabled Verser and his counsel in their intentional effort to undermine the State’s otherwise convincing case. We are doubtful that denial of the States motion for mistrial was error at all. But if it was, it was not only invited; it was welcomed by the defense; and it is not reversible.” 299 Kan. at 785.
During oral arguments in this case held at Wichita State University, both tire prosecutor and appellate defender surmised that, under tire circumstances, had Johnson moved for a mistrial the trial judge would have granted it. This raises the question: Why did defense counsel waive Johnsons right to seek a mistrial? Perhaps he believed drat no error had in fact occurred. Then again, perhaps defense counsel strategized that by not seeking a mistrial, if his client was convicted, he could raise the inattentiveness issue as structural error for the first time on appeal and, without having to show *757 any prejudice, obtain a reversal of Johnson’s convictions. In short, defense counsels strategy of simply refusing to malee a motion for mistrial would provide an insurance policy that if Johnson was convicted, he could obtain a reversal of those convictions on appeal without any showing of prejudice by claiming a structural error.
Since defense counsel did not disclose the reason for waiving Johnson’s right to seek a mistrial, we are left to speculate regarding the precise nature of the defense’s strategy. Still, on this record, I would find defense counsel’s actions were strategic in that they effectively insured the jury trial would continue unabated with the trial court’s inattentiveness an unresolved question of possible constitutional error left for appellate review. Under these circumstances, defense counsel’s actions were invited error. As our court has stated:
“The invited error rule effectively binds trial counsel to strategic decisions inducing judicial rulings with the purpose of obtaining favorable judgments for their clients. The rule also defeats a disreputable strategy aimed at requesting that a judge act in a particular way to salt the record with error as an end in itself, thereby providing potential grounds for reversal of an adverse judgment.” State v. Hargrove, 48 Kan. App. 2d 522, Syl. ¶ 2, 293 P.3d 787 (2013).
Conclusion
It is understatement to observe that judges should remain attentive during judicial proceedings. The question this case presents is how should courts analyze those situations wherein the occasional judge may not be attentive? Current Kansas law embodied in K. S .A. 22-3423 provides a long-standing, prompt, and effective method of remedying judicial somnolence while protecting the fundamental constitutional rights of criminal defendants. A new structural error standard applied in these situations would be without precedent, unnecessary, and prone to abuse by defense counsel. For these reasons, I would affirm Johnson’s convictions.