NOT DESIGNATED FOR PUBLICATION

No. 119,301

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

LEROY RANDALL,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed December 20, 2019. Reversed and remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant, and *Leroy Randall*, appellant pro se.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and WARNER, JJ.

PER CURIAM: Respect for the individual is part of the foundation of American law. There are times in a criminal prosecution when an accused wants to proceed without an attorney and represent himself. This is never wise but it is the right of the individual. If that defendant, after being told of the dangers and disadvantages of self-representation, clearly and with no equivocation, waives his right to counsel and tells the court he wants to proceed on his own, his choice must be honored. Leroy Randall made such a choice in this prosecution but the court did not honor it. Because of this structural error, we must reverse his conviction and remand for a new trial.

1

*Two employees are robbed at gunpoint.*

In Hutchinson, during the fall of 2015, a masked gunman robbed two employees at the Dollar General Store. The robber forced the employees at gunpoint from one end of the store to the other, while he was collecting money from the office and cash registers. The robber then forced the two employees into a bathroom, made them lay face down on the ground, took their cell phones, and locked the exterior deadbolt on the bathroom door. The robber then fled with the cell phones and over $3,000 in cash.

The mystery was soon solved. The employees later described to police the clothing that the robber was wearing. The robbery was recorded by the store's surveillance cameras. The video revealed that a man had entered the store earlier that evening and rummaged around in the back office. That man ran into someone who recognized him and later identified him as Randall. It appeared to be the same man as the robber, though his clothing was different.

A break in the case came when Randall's girlfriend went to the police station and said that Randall was the man who had robbed the Dollar General and had "cased" the store earlier that evening. Police obtained search warrants and found a gun and the clothing that Randall had worn. They later found Randall with over $3,000 in cash on his person. He admitted to being at Dollar General earlier that evening, going into the store's back office because he was "being stupid," and running into a friend. He denied committing the robbery.

The State charged Randall with aggravated robbery, two counts of kidnapping, and two counts of aggravated assault.

*This was not an easy case to try.*

By our count, the record reveals that the district court had to successively appoint six different attorneys for Randall because the attorney-client relationship would deteriorate to an unworkable degree and new counsel had to be appointed. We will focus on the last attorney that represented Randall. In March 2017, the court appointed Nicholas Oswald. But a few months later, Oswald asked to withdraw, citing irreconcilable differences with Randall.

At this point, agreeing that his differences with Oswald were irreconcilable, Randall moved for self-representation. He stated that Oswald had refused to file motions he wanted filed and had not shared discovery evidence with him. The court asked Randall a series of questions and then told him of the perils of self-representation. The court decided that Randall could represent himself but designated Oswald as standby counsel.

Things did not go smoothly. Randall suffered from what he called vertigo. He would become dizzy and fall down. At one hearing, Randall collapsed on the floor when the judge entered the courtroom. The court ordered Randall to be taken back to jail and examined by the jail nurse to determine whether he could participate in the jury trial scheduled for the next day. Randall responded, "I'm ready, Your Honor." But the court held, "Mr. Randall's indicated [he] is not capable of walking on his own and does not appear he's capable of even standing on his own at this point. So we're in recess until we figure out what his physical condition is."

Three days later, the court asked whether Randall still wanted to represent himself. Randall asked, "Your Honor, if I request Mr. Nick Oswald does that mean my motions won't be heard?" The court then went through each of Randall's pro se motions and denied all of them. One of his motions argued that Judge Rose's signature on the search warrant was a forgery. The court said, "The court has reviewed the affidavit contained in

3

the court file. The court knows Judge Rose's signature very well; that is her signature. But notwithstanding that fact, Judge Rose has prepared an affidavit indicating that she was present and signed the original search warrant affidavit. That motion is dismissed."

It was at this point the court decided that Randall could not represent himself. Obviously, the court was concerned with Randall's physical condition. The court told of Randall collapsing:

"Mr. Oswald is officially reappointed at this point and will act as counsel for Mr. Randall based on his medical condition twice in this courtroom. The first time at arraignment Mr. Randall collapsed, the EMTs were brought in and he was taken out on a stretcher. We attempted to have these motions Wednesday and Mr. Randall collapsed in court, could not stand on himself and had to be taken from the courtroom in a wheelchair."

The court told about seeking medical advice:

"The court requested that Mr. Randall be examined by a physician in the jail so I could determine his condition. Mr. Randall refused to be examined by a doctor. Even today he does not appear to be in 100 percent health. He is not going to be capable of when we start a jury trial and I believe he is under some medical condition that would prevent him from being able to complete the trial or represent himself in an efficient fashion."

Finally, the court told about its concerns for the jury trial:

"There might be a different consideration on pretrial motions which I allowed Mr. Randall to proceed with, but once you start the jury trial and are dealing with voir dire and issues like that, with Mr. Randall's physical condition and his inability or refusal to see a doctor the court finds that sufficient reason to determine that Mr. Oswald will represent Mr. Randall."

4

The court reappointed Oswald as trial counsel and set the trial for the first available setting before a different judge. Then, at a hearing one day before the trial, Randall again requested self-representation, citing Oswald's failure to raise his claims by filing motions and failure to share discovery evidence. Randall told the court that he had constitutional violations that should be addressed and the only way for that to happen was through self-representation. He said he suffered from vertigo and he had not refused medical care. The court told Randall to "think about it overnight." The court did not address Randall's claims about attorney Oswald. Circumstances did not improve.

The next day, at the start of the trial, Randall explained that when the vertigo "kicks in," he becomes dizzy and faints. But "at this particular time," he felt "capable" of representing himself. The court denied Randall's request to represent himself because his condition could reoccur and affect Randall's defense. Randall said he "would not proceed with this counsel" and would not participate in the trial. Randall told the court to take him back to his jail cell.

Oswald told the court that "[t]he defendant is not choosing to communicate with me about the trial or trial strategy. It does seem that he has an adamant desire to move forward with self-representation and although I am not medically trained, he certainly seems competent and ready and able to do so."

The court told the jury panel that Randall had chosen not to be present, but he would be brought into court when a witness needed to identify him.

When the court reconvened the next day after the lunch recess, Randall was present. He fell out of his chair and deputies placed him back in the chair and restrained him. The court noted that Randall had not wanted to come into the courtroom and had refused to change into normal clothing. Counsel requested a cautionary instruction to the jury based on Mr. Randall's dress and restraints.

5

The court brought the jury in and told it to disregard the fact that Randall was in jail clothes. Randall said, "I've been in jail for 2 years." Oswald asked to have the jury removed. Randall stated he could not participate, he did not need to be restrained, and to take him back to the jail: "I need to leave the courtroom. I am in vertigo." The deputies picked up Randall's chair and carried him out. The court denied Oswald's later motion for a mistrial.

The jury found Randall guilty of aggravated robbery, two counts of kidnapping, and two counts of aggravated assault.

The court denied Randall's motion for a new trial and sentenced him to 292 months in prison.

Randall appeals, making three claims:
- The trial court's refusal to allow him to represent himself due to his vertigo was structural error;
- the trial court erred by failing to ask about the claim of irreconcilable conflict between Randall and Oswald after Oswald was reappointed to represent him and the conflict prejudiced his defense; and
- the trial court erred by compelling his appearance in the courtroom in front of the jury "chained and shackled" and in jail clothes, which prejudiced the jury against him.

Because we agree that denying Randall's motion to represent himself is structural error, we reverse and remand for a new trial. Since we are ordering a new trial, we need not address his two remaining issues because they claim trial errors and are now moot.

6

*We review some points of the law on self-representation.*

The Sixth Amendment to the United States Constitution advises that in all criminal prosecutions the accused shall enjoy the right to:

- a speedy and public trial;

- be informed of the nature and cause of the accusation;

- be confronted with the witnesses against the accused;

- have compulsory process for obtaining witnesses in the accused's favor; and

- have the assistance of counsel.

All of these rights are preserved in the amendment for the accused. All of these personal rights can be waived by the accused. Thus, courts have held that the right to represent oneself is implicit in the structure of the Sixth Amendment.

This means that defendants who clearly and unequivocally express a wish to proceed on their own, without counsel, have the right to represent themselves after a knowing and intelligent waiver of their right to counsel. But to be a knowing and intelligent waiver, the accused must first be informed of the dangers and disadvantages of self-representation, so that the choice is made with eyes wide open.

Trial courts are often asked by defendants to represent themselves. When deciding such motions, the trial court may not base its decision on the defendant's lack of technical legal knowledge. See *State v. Jones*, 290 Kan. 373, Syl. ¶¶ 1-3, 228 P.3d 394 (2010). The court also may not consider whether a lawyer could better represent the defendant. *State v. Bunyard*, 307 Kan. 463, 470-71, 410 P.3d 902 (2018).

> "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And

although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

The right to self-representation is unqualified if it is asserted before trial. *State v. Cromwell*, 253 Kan. 495, 505, 856 P.2d 1299 (1993). But if the defendant does not move for self-representation before trial, the court has discretion to deny the request. *State v. Cuddy*, 22 Kan. App. 2d 605, 609, 921 P.2d 219 (1996).

As a precaution, a court may appoint standby counsel to be available if termination of the self-representation is necessary. The trial judge may terminate self-representation by a defendant who "deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46. In fact, the trial court here did just that and appointed Oswald as standby counsel. But then, after deciding Randall could not go on physically, the court reappointed Oswald as counsel of record for Randall.

The denial of the right to self-representation is not amenable to harmless error analysis. If the right is violated, the defendant is entitled to a new trial no matter if he or she can show prejudice. *Jones*, 290 Kan. 373, Syl. ¶ 6.

The extent of the right to assistance of counsel and the related right to self-representation is a question of law over which an appellate court exercises unlimited review. *Bunyard*, 307 Kan. at 470.

We will explore three aspects of this issue by answering three questions. First, was Randall's request unequivocal? Next, was his request timely? And, finally, based on the record, was Randall physically able to represent himself at trial?

8

*Randall was clear in his request.*

Randall expressed himself clearly—leaving no doubt about his meaning—that he wanted to represent himself. Several times throughout the proceedings Randall stated that he wanted to represent himself. The court understood Randall was requesting self-representation and at one point granted his motion for self-representation.

The court did so after asking him a series of questions to gauge Randall's ability to do so and after advising Randall of the perils of self-representation. There is no dispute in this appeal that Randall's waiver of his right to counsel was knowing and intelligent.

Even though Randall collapsed at a hearing six days later, he still insisted he was ready to represent himself. Three days after that, the court asked whether Randall still wanted to represent himself. Randall at that point hesitated and asked, "Your Honor, if I request Mr. Nick Oswald does that mean my motions won't be heard?" The court then denied all of Randall's motions. The court ruled that Randall was not capable of representing himself without asking him if he still wanted to represent himself after his motions were denied. Randall's silence at this point was understandable.

At the next pretrial hearing, Randall asked the court to remove Oswald as his counsel and again requested to represent himself. The court told Randall to think about it overnight and they would take it up in the morning. Randall said, "Won't change my mind anymore. I still want to represent myself." On the morning of the jury trial, the court asked Randall how it could be sure that Randall would not have another medical emergency. Randall stated, "Well, I can't really speak on whether or not the court can be concerned about that or not. All I know is that I have vertigo and when it kicks in I become dizzy and faint. But at this particular time I am feeling well capable of representing myself."

The court denied Randall's request. Randall then stated, "I'd like to represent myself. If that's not going to happen then I would not proceed with this counsel. I would object to everything that's being doing in this case. . . . You can take me back to my cell."

Oswald then asserted Randall's right to self-representation to the court, stating, "The defendant is not choosing to communicate with me about the trial or trial strategy. It does seem that he has an adamant desire to move forward with self-representation and although I am not medically trained, he certainly seems competent and ready and able to do so."

The law is clear on one point. A defendant does not have to continually reassert his or her right to self-representation. Once the request is denied by the court, silence by the defendant is not considered to be a waiver of the right. And a defendant does not waive the right to self-representation by allowing defense counsel to represent him or her once the right has been denied without reasserting the right. *Bunyard*, 307 Kan. at 472. And there is no requirement that a motion for self-representation be in writing. See *Bunyard*, 307 Kan. at 477-78.

Randall was made to continually reassert his right to self-representation. The trial court ultimately denied that right. Randall made several unequivocal statements that he wanted to represent himself. In the end, he refused to even attend the trial if he was forced to have Oswald as his attorney. There can be no mistaking his words and actions. His refusal to attend the trial was demonstration of his desire to represent himself.

*Randall's request was timely.*

A defendant can wait too long before trying to exercise his or her right to self-representation. If a defendant fails to make the motion for self-representation within a

reasonable time before trial—at least before the parties convene to voir dire the jury panel—the trial court has discretion to deny the motion. *Cuddy*, 22 Kan. App. 2d at 610.

Randall's desire to represent himself was well known within a reasonable time both before trial and throughout the proceedings. The court had ruled that Randall could represent himself a week before the jury trial.

This means that Randall's right to self-representation was unqualified. Had he made his request after the trial started, it would have been within the trial court's discretion to grant or deny the request. After a trial has started, a trial court could consider the disruption of the proceedings, inconvenience and delay, possible confusion of the jury, or the quality of representation as reasons to deny the defendant's request for self-representation. *Cromwell*, 253 Kan. at 505.

Here, the court was concerned, in part, that Randall had "some medical condition that would prevent him from being able to complete the trial or represent himself *in an efficient fashion*." (Emphasis added.) The court expressed concern for the court-appointed attorney:

> "It would be . . . unfair to expect and unlikely that Mr. Oswald would continue with whatever defense strategy Mr. Randall has and that, I think, it's important that the defense have some sort of a strategy or some sort of a reason for asking questions and pursuing different lines of questioning and making objections and making arguments. And if Mr. Randall starts off in one direction and Mr. Oswald is not on board with that, Mr. Oswald would be in a position of having to continue the trial if Mr. Randall had another medical emergency which has apparently happened twice before in this case."

The trial court's concerns about efficiency and the difficulty Oswald would have in taking over the trial if Randall had another medical emergency do make sense, but the

court lacked the discretion to deny Randall's fundamental right to represent himself for those reasons. His right was unqualified.

*The record does not show that Randall was physically incapable of representing himself at trial.*

Cases from other jurisdictions have held that a defendant may be ruled physically incapable of representing himself or herself at trial. In fact, a defendant's right to self-representation may be terminated if the defendant is not, "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984). We will look at two cases that offer us guidance.

The first case ruled that it was error to deny the right to self-representation. In *State v. Hidalgo*, 241 Ariz. 543, 556, 390 P.3d 783 (2017), *cert. denied* 138 S. Ct. 1054 (2018), the court held it was improper to terminate self-representation based merely on a physical disability. A physical disability can provide grounds to terminate self-representation "only if it renders a defendant physically incapable of presenting a case to the jury and abiding by court rules and protocol." 241 Ariz. at 556. The *Hidalgo* court cited *Savage v. Estelle*, 924 F.2d 1459, 1466 (9th Cir. 1990), in which an extreme speech impediment rendered a defendant physically unable to present his own case to the jury.

The second case examined a bigger picture than just the defendant's physical condition and ruled the denial of self-representation was proper. In *Love v. State*, 113 N.E.3d 730 (Ind. Ct. App. 2018), *transfer denied* 121 N.E.3d 121 (Ind. 2019), the defendant had been granted permission to represent himself and did so for over 10 months. But just days before the jury trial began, the trial court terminated his self-representation and appointed his standby counsel to represent him.

From the time of his arrest until trial, Love claimed he was in extreme pain from strangulated hernias, kidney stones, his nephrostomy tubes, and migraine headaches from a gunshot wound to his head. He sent letters to the trial court detailing his conditions. He wanted to be released to get proper medical care and claimed the jail was neglecting his condition. He claimed he could not effectively communicate with his attorney because of his medical issues and pain. He continued to complain of pain, swelling and numbness in his extremities, and blood clots in his eyes. He moved for continuances because of the "'excruciating pain.'" 113 N.E.3d at 733. He refused care from the jail doctor 14 times. He asked the court if he could lie down on the floor during the trial because of his hernia, which was denied. At the final pretrial conference, the defendant appeared in a wheelchair, was wincing in pain, waved his urine bag in the air, grasped his belly, and groaned audibly. The trial court ruled he could not effectively represent himself.

In upholding the decision on appeal, the *Love* court emphasized that the trial court considered more than the mere fact of Love's medical condition in terminating his self-representation. 113 N.E.3d at 740-42. Rather, Love repeatedly used the fact of his self-representation and his medical conditions to seek continuances. He requested cocounsel. He refused medical treatment. He said he could not communicate with his attorney because of his physical conditions. He used his medical conditions as reasons for not being prepared for trial. He sought to delay the proceedings. The court rejected Love's contention that he should have been permitted to represent himself until he became physically unable to carry on his defense. The court found that "the totality of the circumstances demonstrate that [Love] was not willing to move forward with the proceedings against him in a timely manner and that he was not willing to abide by courtroom procedures and decorum." 113 N.E.3d at 742.

The facts here are different than those in *Love*. Here, the court found the mere *uncertainty* of whether Randall might have another episode to be a "good enough reason" to deny Randall's request to represent himself. "[W]e don't even know when it's going to

13

kick in or how it's going to affect his defense." But on the morning of the jury trial, Randall felt "well capable" of representing himself.

But there are some similarities here with the facts in *Love.* Randall refused to be examined by a doctor. Randall contended he merely refused to sign paperwork that he could not read while he was experiencing vertigo. But that does not explain why Randall could not have been examined at another time. As in *Love*, Randall's trial was continued several times. But it was continued because of conflicts with his attorneys. Randall did not use his vertigo as a reason for the continuances. Rather, after he collapsed at the motion hearing, Randall insisted on proceeding. He said, "I'm ready, Your Honor." Of the 19 pretrial hearings in the record, Randall collapsed at only two of them.

The trial court's concern that Randall would have a vertigo episode during trial and not be able to represent himself was based on speculation. The court explained, "[H]e has vertigo and right now he's okay, but at any time he could have a problem and basically not be able to function." There is nothing in the record showing whether the condition was brought on by stress and would be more likely to occur during a trial. In *Savage*, in contrast, the defendant stated that his speech impediment became worse as his tension became greater. 924 F.2d at 1464.

The record here does not support the trial court's finding that Randall was *physically unable* to represent himself. He had standby counsel in the event he became physically unable to represent himself. Denying Randall the fundamental right to self-representation was structural error.

We reverse Randall's convictions and remand for further proceedings.