Sᴛᴀᴛᴇ ᴏꜰ Kᴀɴꜱᴀꜱ, *Appellee*, v. Aʟꜰᴏɴᴢᴀʟ Jᴏɴᴇꜱ, *Appellant*.

(228 P.3d 394)

Opinion filed April 15, 2010.

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Cathy A. Eaton*, assistant district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: On review of an opinion by the Court of Appeals, Alfonzal Jones appeals from his convictions of one count of aggravated kidnapping and one count of rape. Because Jones was denied his right under the Sixth Amendment to represent himself at his preliminary hearing under rules articulated by the United States Supreme Court, we reverse.

W.H., Jones' ex-fiancée, testified that on the morning of December 28, 2005, she was driving her car in Kansas City, Kansas, when a van appeared and rammed the driver's side of her car. She then saw Jones jump out of the driver's side holding a gun and starting to run in her direction. She accelerated and drove through an intersection, where she was struck by another vehicle and was unable to drive any further. Jones pulled her out of the car by her hair while holding a gun to her head. She attempted to resist him, in the process losing her jacket as he dragged her along. After he threw her to the ground, she stopped resisting and walked with him to an apartment. In the apartment, she undressed and had sexual intercourse with Jones. After Jones left, she made her way to a friend's apartment and called 911.

James Flowers, who was driving the truck with which she collided after she passed through the intersection, provided testimony consistent with her account. When Flowers got out of his truck following the collision, he heard shouting and saw Jones pulling a woman by the hair and pointing an automatic weapon at her. He heard the driver screaming and heard Jones say, "Get out of the car, bitch." Jones turned the weapon toward Flowers, who then walked away from them. Flowers called 911 on his cell phone while

he watched Jones pulling the woman along by her hair and her jacket.

When police arrived, they found a weapons clip on the roadway by the driver's door of the white car. They also found a black jacket with a cell phone in a pocket on the sidewalk a short distance from the accident. Jones was charged with aggravated kidnapping and rape based on his actions toward W.H. and aggravated assault based on the allegation that he threatened Flowers.

Shortly following his arrest, Jones began to file numerous and often repetitive pro se motions in district court, most of which were denied. However, the court granted a motion filed by his appointed counsel requesting a mental competency evaluation. Carol Barry, LCP at the Wyandot Center for Community Behavioral Healthcare, issued a letter to the district court summarizing the results of the evaluation. The letter stated that Jones had prior diagnoses of schizoaffective disorder and bipolar disorder and that he had not been taking medicine prescribed for the disorder. After his incarceration, Jones asked to resume his psychotropic medication, and his behavior then became stable and incident-free.

Barry went on to conclude:

"In regard to his understanding of legal proceedings, he was knowledgeable of his legal charges, the meaning of the charges, and the possible consequences if found guilty. Despite verbalizing that he is not interested in pursuing a plea agreement, he verbalized a basic understanding of plea bargaining. He is aware of basic courtroom rules, terminology, and procedures. He is also aware of appropriate courtroom behavior. He was educated on the behavioral concerns observed and verbalized insight into how his past courtroom behavior could raise the question of competency. He was able to express a goal of engaging in appropriate courtroom behavior, including managing his emotions and utilizing his attorney.

"Mr. Jones recalled his attorney's name and verbalized that he is aware of options to obtain a new attorney or to consider representing himself. He reported that he has sometimes has [sic] difficulty trusting his attorney because of his perception that she 'does not communicate' with him or meet with him often 'enough.' He further reported that he has disagreed with advice given in regard to the filing of some motions. He verbalized his ability and his willingness to communicate and talk with her, should they have future contact. He also verbalized an understanding and willingness to utilize standby counsel. Although Mr. Jones has questionable trust in his attorney, his concerns are reality-based and not indicative of a psychotic process."

The letter concluded that Jones was competent to stand trial and to assist in his own defense.

On August 17, 2006, a preliminary hearing was conducted at which Flowers and W.H. testified about the incidents of December 28. Jones' counsel presented the court with his motion to represent himself, which the court denied.

Following trial, the jury found Jones guilty of aggravated kidnapping and rape, and not guilty of aggravated assault. The district court sentenced Jones to a standard term of 586 months for the aggravated kidnapping conviction, to run concurrently with a standard 155-month term for the rape conviction. On appeal, the Court of Appeals affirmed the conviction, and this court granted review on all issues.

The dispositive issue in this case is whether the district court's denial of Jones' motion to represent himself at his preliminary hearing constitutes reversible error. At the preliminary hearing, Jones' counsel presented to the court Jones' motion to represent himself. The court conducted a cursory review of Jones' legal training, concluded that Jones was not well trained in the law, and denied the motion. This ruling was erroneous based on the test that the trial court used, but the Court of Appeals concluded that the error was harmless. On review, Jones urges this court to find that such error is structural and not susceptible to harmless-error analysis.

Generally, the extent of the right to assistance of counsel is a question of law over which this court exercises unlimited review. See *Robertson v. State*, 288 Kan. 217, 227, 201 P.3d 691 (2007); see also *United States v. Jones*, 489 F.3d 243, 247 (6th Cir. 2007) (appellate court reviews de novo the legal question of scope of right to self-representation).

A defendant who clearly and unequivocally expresses a wish to proceed pro se has the right to represent himself or herself after a knowing and intelligent waiver of his or her right to counsel. A knowing and intelligent waiver requires that the defendant be informed of "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta v. California*, 422 U.S. 806, 835, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975); see *State*

*v. Vann*, 280 Kan. 782, Syl. ¶ 3, 127 P.3d 307 (2006). The right to represent oneself is implicit in the structure of the Sixth Amendment. "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." 422 U.S. at 819. A trial court may not measure a defendant's competence to waive his or her right to counsel by evaluating the defendant's "technical legal knowledge." *Godinez v. Moran*, 509 U.S. 389, 399-400, 125 L. Ed. 2d 321, 113 S. Ct. 2680 (1993).

At the preliminary hearing, Jones' counsel asked the court to consider Jones' motion to represent himself. The following discussion ensued:

"MS. MCBRATNEY [appointed counsel for Jones]: Just procedurally, your Honor, on the motion for self-representation, again, I indicate there are factors that the Court procedurally should inquire directly from the defendant his level of education, any special training he has in the field of the law, things of that nature. There's several factors. So I think that just requires inquiry by the Court.

"THE COURT: Right.

"MS. MCBRATNEY: And then in reference to ineffective assistance of counsel, I think the court, you know, should just get the client's statements on that and what he believes supports that and make a ruling.

"THE COURT: Okay. Let me ask you, Mr. Jones. What how many years of formal education have you had, sir?

"THE DEFENDANT: I have a GED.

"THE COURT: Okay. Do you have any specialized training anywhere at any college level in the law?

"THE DEFENDANT: I'm studying law.

"THE COURT: Where did you study law.

"THE DEFENDANT: I studied 'em out the book. [*Sic.*]

"THE COURT: What book?

"THE DEFENDANT: Law books.

"THE COURT: Tell me what kind of law books you studied.

"THE DEFENDANT: I study on the Kansas Court Rules and Procedures 2005. I studied cases.

"THE COURT: Okay. And this you've when did you do this?

"THE DEFENDANT: I did it probably I've been studying law for about 10 years.

"THE COURT: Okay. Well, I have never and I don't intend to start now allowing people who do not have any specialized legal training that have just done some reading, I'm not going to let them represent themselves. You can assist. I'm going to keep—

"THE DEFENDANT: So are you saying you deny me my rights to self-representation?

"THE COURT: I'm saying that you must have an attorney sitting with you and you can work—

"THE DEFENDANT: So basically you're telling me you deny me my right for self-representation?

"THE COURT: Yes. And you can do whatever you like on that, but I'm going to deny the motion.

. . . .

"THE DEFENDANT: May I ask a question?

"THE COURT: Certainly.

"THE DEFENDANT: How can you deny me my rights to represent myself? This is my right under the Sixth Amendment.

"THE COURT: Not—not with what you told me that you just read some books.

"THE DEFENDANT: The Sixth Amendment says I can do it.

"THE COURT: You're misinterpreting the Sixth Amendment. There's case law on this matter and if I determine that your level of self taught—

"THE DEFENDANT: Just because I haven't went to college? Is that what you mean my level of education?

"THE COURT: I don't believe anybody that just picks up a book and reads a book is competent to try a case when you have an attorney who has a college degree plus a law degree.

"THE DEFENDANT: What if I don't want the attorney? You can't force me to have this attorney if I don't want her, if I don't want her representing me.

"THE COURT: Just watch me. Just watch me. Call your first witness."

At that time, the State called its first witness, and the hearing proceeded with McBratney representing Jones. A different judge, however, conducted a renewed hearing on Jones' motion to represent himself at the beginning of the trial. The court engaged in a lengthy discussion with him, at the conclusion of which Jones agreed to allow his appointed counsel to continue to represent him.

The State concedes and this court agrees that the trial court committed error in denying Jones' motion. It failed to make the critical inquiry: whether Jones' waiver of counsel was knowing and intelligent. See *Faretta*, 422 U.S. at 835. The court relied instead on a clearly wrong reason: that Jones was not adequately trained in the law. See *Godinez*, 509 U.S. at 399-400. Furthermore, Jones' numerous pro se motions demonstrated an ability to comprehend the law and to articulate legal arguments. His psychological as-

sessment found him able to understand and participate in his defense.

Our analysis next proceeds to determine whether the Sixth Amendment right to self-representation extended to Jones' preliminary hearing. The right to counsel applies at all "critical stages" of the criminal process of an accused who faces incarceration. *Iowa v. Tovar*, 541 U.S. 77, 80, 158 L. Ed. 2d 209, 124 S. Ct. 1379 (2004). This right attaches to pretrial proceedings where the State has committed to prosecuting the accused. *State v. Bristor*, 236 Kan. 313, 319, 691 P.2d 1 (1984).

The reasoning by the Supreme Court in *Faretta* supports the conclusion that the right to self-representation extends to all phases of the criminal proceeding:

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.'" 422 U.S. at 819-20.

A preliminary hearing is a right that is mandated in Kansas by statute; it is not an express constitutional right. See K.S.A. 22-2902; *State v. Knighten*, 260 Kan. 47, 55, 917 P.2d 1324 (1996). The preliminary hearing establishes standards and procedures for criminal prosecution that are derived from the Fourth Amendment and its common-law antecedents. *Gerstein v. Pugh*, 420 U.S. 103, 111, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975); *In re D.E.R.*, 290 Kan. 306, 311-12, 225 P.3d 1187 (2010). A defendant has the right to be present in person at a preliminary hearing, to introduce evidence on the defendant's own behalf, and to cross-examine witnesses against the defendant. K.S.A. 22-2902(3). The preliminary hearing is the method utilized in Kansas to satisfy the Fourth Amendment right of a person to be free from extended pretrial restraint of liberty without a judicial determination of probable cause to support the detention or restriction on liberty. *In re D.E.R.*, 290 Kan. at 312.

A preliminary hearing is often a critical stage of the criminal process. See, *e.g.*, *Moore v. Illinois*, 434 U.S. 220, 54 L. Ed. 2d 424, 98 S. Ct. 458 (1977) (identification of defendant at preliminary

hearing); *Coleman v. Alabama*, 399 U.S. 1, 9, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970) ("guiding hand" of counsel at preliminary hearing is essential to protect accused against erroneous or improper prosecution: examination of witnesses may expose fatal weaknesses in the State's case that may lead magistrate to refuse to bind the accused over; interrogation of witnesses can fashion impeachment tool for use in cross-examination of State's witnesses at trial; defendant can discover nature of case and enable preparation of proper defense; and effective arguments can be made on such matters as necessity for early psychiatric examination or bail); *White v. Maryland*, 373 U.S. 59, 60, 10 L. Ed. 2d 193, 83 S. Ct. 1050 (1963) (whatever normal function of preliminary hearing under Maryland law might be, preliminary hearing was critical stage of proceeding for right-to-counsel purposes where defendant entered guilty plea that was later introduced in evidence against him at trial).

We note that several older decisions of this court held that Sixth Amendment right-to-counsel protections did not automatically attach at preliminary hearings. See, *e.g., Byrd v. State*, 196 Kan. 466, 413 P.2d 61 (1966); *State v. Lewis*, 195 Kan. 389, 405 P.2d 796 (1965), *overruled on other grounds State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974); *Tarr v. State*, 194 Kan. 798, 402 P.2d 309 (1965); *Bergin v. State*, 194 Kan. 656, 400 P.2d 978 (1965). These decisions were largely fact-specific and were issued before the critical-stage analysis fully evolved in the United States Supreme Court.

As the present case illustrates, the preliminary hearing is a critical phase of the criminal prosecution. In addition to determining whether probable cause existed sufficient to bring Jones to trial, sworn testimony was taken to which both the State and Jones referred during examination of witnesses at the jury trial. For example, in cross-examining W.H. at trial, Jones' counsel repeatedly asked her to read from her testimony at the preliminary hearing, where she stated that she had consented to having sex with Jones and that it was an affectionate situation. W.H. was also asked about her earlier statement in which she said that the interviewing detective was leading her to say certain things and that he mouthed to her to say that she was scared. Further questions compared W.H.'s statements at the preliminary hearing with her trial testi-

mony, including W.H. telling the court at the preliminary hearing that she had not been raped.

The Court of Appeals determined that it was error to deny Jones his right to represent himself at the preliminary hearing but concluded that, because the ruling in question occurred at the preliminary hearing instead of at trial, it is subject to harmless-error analysis. The Court of Appeals noted that Jones did not allege that the deprivation of his right to self-representation at the preliminary hearing affected the trial, the convictions, or the structural integrity of the criminal proceedings. After reviewing the record, the Court of Appeals found that the violation of Jones' Sixth Amendment right at the preliminary hearing had little or no likelihood of changing the outcome of his trial and was therefore harmless error. 40 Kan. App. 2d at 1154-55.

As a general principle, after an accused has gone to trial and has been found guilty beyond a reasonable doubt, any error at the preliminary hearing stage is considered harmless unless it appears that the error caused prejudice at trial. *State v. Butler*, 257 Kan. 1043, 1062, 897 P.2d 1007 (1995).

In the present case, the record contains no suggestion that Jones' counsel performed inadequately at either the preliminary hearing or the trial, and Jones makes no argument that, had he proceeded pro se, he would have elicited any evidence or raised any issue at the preliminary hearing that would have put him in a better posture at trial. The lack of prejudice is not, however, the end of the analysis in this case.

We have already observed that the preliminary hearing was a critical stage in Jones' prosecution. His right to represent himself was as vested at the hearing as it was at trial. To hold that there is no redress for a trial court denying a defendant an essential constitutional right at a preliminary hearing because the error ultimately becomes subordinate to a trial properly conducted with counsel is to turn the constitutional right into an illusory right.

The Court of Appeals looked to *People v. Wardlaw*, 6 N.Y.3d 556, 816 N.Y.S.2d 399, 849 N.E.2d 258 (2006), where the New York Court of Appeals found that failure to provide a defendant with counsel at a suppression hearing was harmless error because

even a successful suppression could not have changed the outcome of the trial.

The United States Supreme Court has rejected this kind of analysis at the trial stage. "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 79 L. Ed. 2d 122, 104 S. Ct. 944 (1984). If a defendant's right to represent himself or herself is violated, the defendant is entitled to a new trial regardless of whether he or she can demonstrate prejudice. See, *e.g.*, *Flanagan v. United States*, 465 U.S. 259, 268, 79 L. Ed. 2d 288, 104 S. Ct. 1051 (1984) (violating Sixth Amendment right to represent oneself does not require showing of prejudice to defense in order to obtain reversal).

Even the *Wardlaw* court cautioned that harmless error does not excuse every violation of the right to self-representation:

"We add a word of caution: Our holding does not imply that the harmless error rule can always be applied where the right to counsel has been violated. . . . [W]here a deprivation of the right to counsel was egregious, and where to leave it unremedied might invite future abuse, appellate courts may grant relief even though the defendant was not prejudiced by the error." 6 N.Y.3d at 560-61.

Denying a defendant the right to self-representation at the preliminary hearing is the kind of violation of an essential constitutional right that can be addressed only on appeal. See *Flanagan*, 465 U.S. at 268 (denials of Sixth Amendment rights to counsel are not susceptible to interlocutory appeal; they are effectively reviewable on appeal).

Errors are structural when they "defy analysis by 'harmless-error standards' " because they "affect[] the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991). A violation of a Sixth Amendment right to counsel is subject to structural error analysis.

"[E]rroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error." ' . . . Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct

of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150, 165 L. Ed. 2d 409, 126 S. Ct. 2557 (2006) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282, 124 L. Ed. 2d 182, 113 S. Ct. 2078 [1993]).

We accordingly decline to speculate what might have happened had the district court followed constitutionally mandated procedures in ruling on Jones' motion to represent himself at the preliminary hearing. We instead reverse the conviction and remand for a new proceeding, commencing with a preliminary hearing.

In light of this ruling, the other issues raised on appeal are moot. We will, however, briefly discuss several issues of alleged trial error that may arise again if Jones is retried.

Jones argued that the trial court erred in admitting evidence relating to prior misconduct without issuing a limiting instruction. The jury heard testimony containing several references to a Protection From Abuse (PFA) order that W.H. intended to seek on December 28, 2005, the day of the attack. We do not address at this time whether that testimony was properly admitted, but we note that evidence of domestic discord that qualifies as another crime or civil wrong is subject to evaluation for admission under K.S.A. 60-455. See *State v. Vasquez*, 287 Kan. 40, Syl. ¶ 1, 194 P.2d 563 (2008). In order to admit evidence under K.S.A. 60-455, a court must determine that proposed evidence is relevant to prove a material fact, is disputed, and has probative value that outweighs its potential for producing undue prejudice. Finally, the court must give a limiting instruction informing the jury of the specific purpose for admission. 287 Kan. 40, Syl. ¶ 2.

Jones also challenged a jury instruction on aggravated kidnapping that was broader than the charge contained in the information. Jones was initially charged with aggravated kidnapping based on an intent to commit the crime of rape. The jury instruction, however, followed a broader statutory definition of aggravated kidnapping. Jones argues on appeal that he was denied effective notice of the basis of the charge against him.

"A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. That error is excusable only where the substantial

rights of the defendant are not prejudiced. [Citation omitted.] It is the long-established rule in Kansas that instructions should be confined to issues made by the pleadings and should not be broader or narrower than the information. [Citation omitted.] The charging instrument must set out the specific offense alleged against the defendant in order to inform the defendant of the nature of the accusation against him or her and to protect the defendant from being convicted on the basis of facts that were not contemplated in the initial charges. . . . The wording of a complaint is binding on the State in pursuing its theory before a jury. [Citation omitted]" *State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 (2009) .

Under the facts before it, the jury might well have found that the State failed to prove that Jones intended to commit rape at the time that he initiated the kidnapping; he may have intended to terrorize his victim, an element of aggravated kidnapping that the State did not charge but nonetheless was included in the jury instruction. While the evidence might have supported an instruction relating to terror, the charging instrument did not. The State did not seek to amend the information to include the terror element. See *State v. Matson*, 260 Kan. 366, 370, 921 P.2d 790 (1996) (discussing propriety of amending charges prior to submitting case to jury). The consequence was that Jones was not aware during the introduction of evidence or at any time prior to the preparation of the jury instructions that he was at risk of conviction based on an intent to terrorize. Further, there was no attempt by the State to amend the charges consistent with the evidence, thus exposing him to the risk that the jury may have convicted him based on an uncharged element of a crime. Although we need not determine whether this error was so serious as to be reversible, we note that the prosecution and the court must exercise caution in conforming jury instructions to the charges.

Finally, Jones challenged the propriety of a jury instruction reading: "You must consider this case without favoritism or sympathy for or against either party. Neither sympathy nor prejudice should influence you." Our case law instructs that such an instruction is objectionable because it tells the jury what not to do rather than what to do. It is recommended that the instruction not be given unless there are unusual circumstances, but giving such an instruction does not necessarily constitute error. *State v. Sully*, 219 Kan. 222, 226, 547 P.2d 344 (1976).

Reversed and remanded for reinitiating criminal proceedings against Jones, including a new preliminary hearing.

DAVIS, C.J., not participating.
GLENN D. SCHIFFNER, District Judge, assigned.