IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,645

STATE OF KANSAS,
*Appellee*,

v.

JOSIAH R. BUNYARD,
*Appellant*.

SYLLABUS BY THE COURT

A district judge's denial of a criminal defendant's right to forego counsel and represent himself or herself is structural error requiring reversal of the defendant's convictions.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 29, 2016. Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Opinion filed February 16, 2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded.

*Richard Ney*, of Ney & Adams, of Wichita, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Josiah R. Bunyard appeals his convictions for battery, aggravated battery, attempted violation of a protective order, and intimidation of a witness.

1

During the course of his case, Bunyard was very active in his defense. At a motions hearing on the Friday before his trial was to begin on Monday, Bunyard interjected during argument before the court. The district judge told Bunyard that he could either speak through his appointed lawyer or represent himself. Given those options, Bunyard said he would represent himself. After discussing the matter with counsel, Bunyard temporarily dropped the issue. But, before the conclusion of the hearing, Bunyard again interjected and stated that he wanted it on the record that he was "unequivocally" asserting his right to self-representation. The judge refused to take up the matter of self-representation at that time, instead telling Bunyard that he must file a written motion if he wanted to represent himself. Bunyard did not file a written motion or otherwise reassert the right to self-representation when court reconvened the next week.

Before the Court of Appeals, Bunyard raised multiple issues. Included among them was denial of his right to self-representation. The Court of Appeals rejected this claim and the other claims Bunyard raised and affirmed his convictions and sentence. See *State v. Bunyard*, No. 112,645, 2016 WL 1719607, at *17 (Kan. App. 2016).

Bunyard filed a petition for review by this court, which was granted. We hold that there was structural error in the handling of Bunyard's invocation of his right to self-representation, and we reverse the Court of Appeals decision and the judgment of the district court. The case must be remanded to district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

To resolve Bunyard's appeal, it is not necessary to recite the facts leading to the charges against him in detail. Highly summarized, the State alleged that Bunyard choked and broke the jaw of his girlfriend, Jennifer Wood. After Bunyard was arrested and ordered not to have any contact with Wood, Bunyard sent a letter to a mutual friend that the State alleged was intended to be passed to Wood. See 2016 WL 1719607, at *1.

2

At the Friday pretrial hearing referenced above, the district judge took up two motions, including the State's motion to introduce Wood's preliminary hearing testimony at trial. The State had unsuccessfully attempted to find Wood to secure her attendance and live testimony.

Multiple witnesses testified about the State's efforts to locate Wood. After the testimony concluded, Mark Sevart, Bunyard's appointed counsel, argued that the State was not diligent enough to render Wood unavailable to testify. In the alternative, Sevart argued, even if Wood qualified as legally unavailable, it would be inappropriate to admit her preliminary hearing testimony, because, according to him, the cross-examination of Wood conducted by Bunyard's previous counsel, Charles O'Hara, was insufficient to satisfy the Confrontation Clause.

During the State's response to Sevart's argument, the prosecutor noted that he had new information on the whereabouts of another witness, for which both the State and defense had requested a material witness warrant. During a colloquy between the judge and the State about that witness, Bunyard interrupted. The transcript of the hearing includes the following exchange:

> "THE COURT: So you're not seeking to have her declared unavailable since, apparently, she's recently been located?
>
> "[THE STATE]: That's correct.
>
> . . . .
>
> "THE DEFENDANT: Your Honor, could I please be heard?
>
> "THE COURT: Mr. Bunyard, you have appointed counsel who has filed this motion or is responding to this motion, so you're either having Mr. Sevart argue this case—or are you representing yourself? Which is it?

3

"THE DEFENDANT: "I'll represent myself, if that's the choice. I will definitely—

"THE COURT: You're seeking to have Mr. Sevart taken off this case?

"THE DEFENDANT: If those are my options, then, yes.

"THE COURT: What are you asking, Mr. Bunyard?

"THE DEFENDANT: I'm asking to be heard right now.

"THE COURT: About what?

"THE DEFENDANT: About what we're having the hearing on. I have some information that—they've given you information that's not correct.

"THE COURT: Mr. Sevart, why don't you take a moment . . . and speak off the record with your client. Do you expect this to be a lengthy conversation?

"MR. SEVART: Well, Your Honor, perhaps we should reconvene Monday, as far as—or, I mean, later today, I guess, too, but, I mean, I know you've got some other items—

"[THE STATE]: At the very minimum, I'd ask that you authorize a material witness warrant for Ms. Wood. We need to have the weekend to try to find her.

"THE COURT: Mr. Sevart, why don't you take a few minutes and speak with him there at counsel table, and then we'll see if we can resolve this.

"[THE STATE]: Do you want me to step out, Judge?

"THE COURT: No. You're fine."

4

When the court came back on the record, the judge noted that the prosecutor had left the courtroom briefly while Sevart and Bunyard spoke. The judge then asked Sevart to inform the court of Bunyard's decision.

"MR. SEVART: Your Honor, I think the points that my client wanted to raise that may or may not make any difference but should be presented to you are, apparently, Mr. O'Hara was retained with respect to one of the earlier cases. His status, whether he was appointed or just showed up or whatever with respect to this case, I guess, is not real clear. . . .

"THE COURT: Well, let me stop you right there, and let's nail this down.

. . . .

"THE COURT: Mr. O'Hara generally doesn't take appointments on criminal cases, so if he was present, whether pro bono or in relation to another case, he was not— you would agree he was not appointed by the Court to represent Mr. Bunyard on this case at the preliminary hearing; correct? On this case.

"THE DEFENDANT: He was not retained by Mr. Bunyard, either.

"THE COURT: That is not my question, Mr. Bunyard. I am addressing my question to Mr. Sevart, not to you.

"My question, Mr. Sevart, is: Was he appointed by the Court to represent Mr. Bunyard?

"MR. SEVART: No."

The district judge and Sevart then continued to discuss O'Hara and whether there had been any objection raised at the preliminary hearing to his representation of Bunyard. As the judge was about to rule on one of the motions, Bunyard again interjected during the following exchange:

5

"MR. SEVART:  What . . . I was getting to, Your Honor, is I think we can get to the motion on the witness, as far as the issuance of the warrant, and if the Court would reserve ruling until Monday with respect to the preliminary hearing—the usage of the preliminary hearing transcript, it may be moot if they locate her. But perhaps we have time so the Court can review that transcript, and then, also, I can visit with my client a little further and we can reconvene Monday morning on this motion.

"THE COURT:  All right. I'm going to go ahead and rule on the one motion.

"THE DEFENDANT:  I want it on the record I wish to represent myself unequivocally.

"THE COURT:  Mr. Bunyard, for the time being, I'm not going to take up an oral motion made at this time. I'm going to give you an opportunity to speak further with Mr. Sevart. I'm also going to give you an opportunity, if you decide to pursue that route, to file a proper motion to the Court. But we're not going to address that at this time.

"THE DEFENDANT:  How will I get that to—

"THE COURT:  Mr. Bunyard, that's all there is to say on that issue.

"THE DEFENDANT:  How will I get it to the Court? How do I tell them that?

"THE COURT:  Mr. Bunyard, you seem quite familiar with the procedures in filing pro se motions, so I'm not going to dictate to you how to represent yourself or proceed in that fashion if you want to.

"THE DEFENDANT:  The Court is—there's no mail going out for the weekend. There's no way I can get it there.

"THE COURT:  Mr. Bunyard, we're not addressing this matter further.

"SHERIFF'S DEPUTY:  Do you want him removed, sir?

6

"THE COURT: We'll—we'll proceed."

The judge then ruled that Wood was unavailable and that the transcript of her preliminary hearing testimony could be introduced by the State at trial. He then concluded the motions hearing.

When Bunyard's trial began on Monday, before jury selection began, the district judge and parties addressed several outstanding issues.

"THE COURT: Thank you. We're here this morning on the day of trial. We have spent the morning in some conversations in chambers and with defense counsel and the prosecuting attorney dealing with several outstanding issues trying to reach a resolution on some of them, addressing some last-minute matters. At this point, we're going to place on the record several things and address several outstanding matters.

"To recap, on Friday, February 21st, we appeared and, to clarify and confirm with counsel, at that time as to the [S]tate's motion to determine witness availability I did find that as to witness Jennifer Wood that reasonable diligence had been shown by the [S]tate and, therefore, the preliminary hearing transcript of Ms. Wood could be used at trial.

"I ruled as to the consolidation of these two cases that resulting from two or more acts or transactions connected together, or constituting parts of a common scheme or plan, that these cases would be consolidated.

"The Motion to Suppress . . . filed by Mr. Sevart was withdrawn as the [S]tate indicated they did not intend to use any evidence taken from the defendant's home at trial.

"There were three separate motions to endorse; all of those were granted without objection. And I believe those were all the motions that were filed by either the defense or the [S]tate that were outstanding that needed to be dealt with Friday, correct?

7

. . . .

"THE COURT: All right. Obviously, depending on the trial, the [S]tate could reserve the right to bring something up in rebuttal. But, other than that, that is your understanding, Mr. Sevart, of all of the motions?

"MR. SEVART: Your Honor, of the motions that—

"THE COURT: Filed by you.

"MR. SEVART: Yes, filed by me. We do have some issues with respect to some pro se motions and if we could address that[,] I'd appreciate it.

"THE COURT: All right. Then at this time it looks like we need to address Mr. Bunyard and Mr. Sevart on this. There have been a number of pro se motions filed by the defendant, my understanding would be while he was represented by various attorneys in this case, and we need to—without having a clear record on what remains at issue, we need to address that. So, Mr. Sevart, how are you proposing we proceed?

"MR. SEVART: Your Honor, if the Court would allow, what I would propose that we do is to—I guess, a formal method would be to withdraw all of those pretrial motions and in lieu of that have me present to the Court by way of oral motion the issues, I guess, that are—that are outstanding with respect to items raised in those pretrial motions. In other words, to substitute, I guess, maybe, is a better word, an oral presentation this morning that would dispose of all remaining issues and, therefore, I guess, all those other pretrial motions can be withdrawn or resolved by way of a substitution oral motion.

"THE COURT: All right. Mr. Bunyard, you are aware that you have filed a number of motions purporting to represent yourself during the course of this case, and at this time you've had an opportunity to speak with Mr. Sevart either on Friday, over the weekend, or this morning about how you wish to proceed on those motions.

"THE DEFENDANT: I'm sorry, I didn't understand exactly what you said.

8

"THE COURT: Have you had an opportunity to speak with Mr. Sevart about all of the pro se motions that you have filed?

"THE DEFENDANT: Yes. He's—he's got a list that—that is going to sum up the ones that are still relevant and—yeah.

"THE COURT: All right. Mr. Bunyard, you have filed a lot of motions, and at this point because it's unclear exactly what is still at issue from your perspective, or what has or has not been ruled upon, what Mr. Sevart is proposing, and I'm prepared to do, is you're going to withdraw, if you would like, all of your motions. So all of the motions you have filed you're basically saying you no longer want them heard, and then what Mr. Sevart is saying is he will now make an oral motion on the ones that, apparently, you two have discussed and that you still believe are relevant; you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: And is that what you want to do? Do you want to, at this time, withdraw all of the motions that you, yourself, have personally filed in this case?

"THE DEFENDANT: As long as he argues the ones still that we've discussed that he's going to do, as long as that's still going to take place, then, yeah.

"THE COURT: That's my understanding. Mr. Sevart has spoken with you and he says that he knows what you still want to be heard. He's going to make an oral motion on those. But, as far as your written motions, you're fine with withdrawing all of those motions and not having those motions heard where you would basically tell me what your arguments were.

"THE DEFENDANT: Again, as long as he argues the ones that we've discussed, yes.

"THE COURT: All right. Then, at this time, I'm going to show all of the pro se motions that you have filed to date that haven't already been ruled upon in some fashion

9

by another judge as being withdrawn at this time. And you don't object to that, correct, Mr. Bunyard?

"THE DEFENDANT: Again, as long as all this is argued that we're talking about that I've discussed with him, I do not object.

"THE COURT: All right. In that case, Mr. Sevart, I'll allow you to proceed with your first oral motion."

Sevart then argued the substance of several of the pro se motions, and the district judge ruled upon them.

After the conclusion of evidence and closing arguments at trial, the jury returned guilty verdicts on all four counts. The district judge sentenced Bunyard to 144 months on the aggravated battery conviction. For each of the three other counts, he imposed a sentence of six months in jail to run concurrent to the aggravated battery sentence.

When the Court of Appeals took up Bunyard's self-representation issue, the panel noted that "a district court cannot effectively filibuster a criminal defendant's spontaneous request for self-representation by refusing to rule on the request or by imposing requirements that the defendant reassert that request in a detailed written form or in successive hearings to secure a ruling." *Bunyard*, 2016 WL 1719607, at *4 (citing *State v. Vann*, 280 Kan. 782, 794, 127 P.3d 307 [2006]). Likewise, the panel said, a district judge cannot "act in a manner likely to foster the impression the request will necessarily be denied or withhold a discussion of the implications of self-representation to stymie a defendant's desire to represent himself or herself." 2016 WL 1719607, at *4. Nevertheless, the panel ruled that there had been no "functional or deliberate" undermining of Bunyard's right to represent himself. 2016 WL 1719607, at *4.

10

"Bunyard was exceptionally active personally in the defense of the charges both through his extensive pro se filings and his comments during court appearances. Yet, he did not make a request for self-representation until the district court mentioned it a couple of days before trial. Bunyard did not then act on the district court's direction by preparing even a nominal or bare-bones motion for self-representation—something that was within his capacity." 2016 WL 1719607, at *4.

The panel also noted that Bunyard did not "resurrect" the issue on the morning of trial, when, in its words, he "affirmatively assented" to counsel's argument on other outstanding pro se motions. 2016 WL 1719607, at *4.

We granted Bunyard's petition for review of the Court of Appeals decision.

DISCUSSION

The extent of the right to assistance of counsel and the related right to self-representation is a question of law over which this court exercises unlimited review. See *State v. Jones*, 290 Kan. 373, 376, 228 P.3d 394 (2010).

The United States Supreme Court has held "that the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right to self-representation." *Vann*, 280 Kan. at 793 (citing *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 [1975]). "'The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.'" *Jones*, 290 Kan. at 377 (quoting *Faretta*, 422 U.S. at 819).

"A criminal defendant who before trial clearly and unequivocally expresses a wish to proceed pro se has the right to self-representation after a knowing and intelligent waiver of the right to counsel. A knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation. The

11

choice is to be made '"with eyes open."'" *State v. Graham,* 273 Kan. 844, 850, 46 P.3d
1177 (2002).

There is obvious potential tension between the right to counsel and the right, as a
layperson, to represent oneself.

"'Because the right to proceed pro se is at odds with the right to be represented by
counsel, "[t]he courts must indulge 'every reasonable presumption against waiver' of the
right to counsel, and will 'not presume acquiescence in the loss of fundamental rights
[*i.e.,* the right to counsel].'" [Citation omitted.] "[U]nlike the right to counsel, the right to
self-representation can be waived by mere failure to assert it." [Citation omitted.]' *State v.
Lowe,* 18 Kan. App. 2d 72, 74-75, 847 P.2d 1334 (1993)." *Vann,* 280 Kan. at 793.

Still, "[a] trial court may not measure a defendant's competence to waive his or her
right to counsel by evaluating the defendant's 'technical legal knowledge.'" *Jones*, 290
Kan. at 377 (citing *Godinez v. Moran*, 509 U.S. 389, 399-400, 113 S. Ct. 2680, 125 L.
Ed. 2d 321 [1993]). Whether a lawyer could better represent a defendant also is not the
question for the court to decide. See *State v. Lowe*, 18 Kan. App. 2d 72, 75, 847 P.2d
1334 (1993).

The Supreme Court of the United States has held that a failure to honor a criminal
defendant's properly asserted right to self-representation is structural error. "'Since the
right of self-representation is a right that when exercised usually increases the likelihood
of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless
error" analysis. The right is either respected or denied; its deprivation cannot be
harmless.'" *Vann*, 280 Kan. at 793 (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8,
104 S. Ct. 944, 79 L. Ed. 2d 122 [1984]).

Two previous cases—one from this court and one from the Court of Appeals are
instructive here.

In the first, *State v. Vann*, the State charged defendant Durayl Vann with attempted first-degree murder, among other crimes. Two months after the district court appointed counsel for Vann, he filed a pro se motion requesting different counsel and alleging a conflict of interest between himself and counsel. Vann did not serve counsel with a copy of the motion, and the motion was not addressed at Vann's preliminary hearing, which was held a few days after the motion was filed. The day after the preliminary hearing, Vann sent a letter to the clerk, asking about the motion for new counsel. A few days later, Vann filed several more pro se motions, including a motion to proceed pro se and retain stand-by counsel. The presiding district judge forwarded the letter Vann had written to the clerk to Vann's counsel and advised that if counsel wanted a hearing on the matter, he needed to contact the court and a hearing would be scheduled. *Vann*, 280 Kan. at 786-87.

Before trial, the State reminded the district judge that Vann had filed pretrial pro se motions. The judge responded that he did not ordinarily hear pro se motions when a defendant had representation. But, if the defendant wanted to discuss the motions with his counsel and have counsel bring them before the court, the judge said, he would hear them. Vann's counsel did not want to bring any other motions before the court, and Vann did not say anything to the court about the motions at that time.

Vann did not raise any of his pro se motions again until the court heard a motion for new trial after Vann's convictions. Vann then brought up his motion for new counsel. The district judge told Vann that he should have called the court's attention to the motion on the morning of trial. At sentencing, Vann again brought up his pro se motion for new counsel, and the district judge again declined to address it.

On appeal, this court addressed whether the district court's refusal to address Vann's motion to proceed pro se with stand-by counsel violated his right to self-representation.

13

The court framed the dispositive issue as "whether the defendant clearly and unequivocally asserted his right to self-representation prior to trial." 280 Kan. at 794. *Cf. State v. Cromwell*, 253 Kan. 495, 505, 856 P.2d 1299 (1993) (right of self-representation unqualified if asserted before trial; after trial starts, district judge has discretion to grant request). The State argued that Vann's "failure to serve the motion on counsel, request a hearing, or to raise the issue at the pretrial motions hearing was a waiver of the right to self-representation." *Vann*, 280 Kan. at 794. This court disagreed.

> "The defendant's motion 'to proceed pro se and retain the attorney as consultant in an advis[o]ry capacity' was a clear and unequivocal assertion of the right to proceed pro se prior to trial. While we acknowledge that the defendant had filed other motions requesting the appointment of a new attorney, this did not change the fact that the defendant expressed a desire to proceed pro se. In fact, the existence of these other motions was a greater reason for the court to conduct a further inquiry into the defendant's position.

> "Once the defendant asserted his constitutional right to self-representation by pretrial motion, his counsel was advised of the existence of the defendant's pro se motions by letter from the district court, and the defendant was told by the court that it would not consider motions raised by the defendant himself. The defendant subsequently explained to the court that counsel had advised him against raising his pro se motions. Based on these facts . . . a possibility certainly existed at the pretrial motions hearing that the defendant allowed defense counsel to continue representing him because he felt that he had no other choice." 280 Kan. at 794.

This court stated that a holding to the contrary would mean "a defendant would bear the burden of continually reasserting his or her right to self-representation or it is waived." 280 Kan. at 794-95. But "where the defendant allows defense counsel to continue representing him without reasserting his right to self-representation, it does not constitute a waiver of that right." 280 Kan. at 795. Because the district judge failed to

14

consider Vann's pretrial assertion of his right to self-representation, we reversed his convictions and remanded the case for new trial. 280 Kan. at 795.

The second case, *State v. Lowe*, from the Court of Appeals lent support to our court's decision in *Vann*. See *Vann*, 280 Kan. at 793-95 (citing *Lowe*, 18 Kan. App. 2d at 74-76, 79). In *Lowe*, counsel for defendant Michael Lowe informed the district judge that her client wished to represent himself. The judge then spoke directly to Lowe:

"'[THE COURT:] She said you wanted to represent yourself, which I need to bring you in here and tell you what the law is on that.

"'The only way I can do that is if I make a finding that it would not be of benefit to you to have a lawyer in the case, is the only way that I can let you be your own lawyer.

"'I've never been a defendant in a case. I've been a lawyer in a case; I've been a judge in a case. I tell you, you don't want to try and undertake that yourself, when you are so close to it, when you are the defendant.

"'I've tried a number of defendants and you are better off letting the lawyer make the legal decisions. Whether you enter a plea or not or that sort of matter, that's up to you; your lawyer doesn't have nothing to say about that. But where to stand and, oh, legal things I'm talking about, you know, how to make a legal argument on whether a piece of evidence is permissible or not, you are better off with a lawyer, I'm telling you.

"'Another thing, you have a right to be in your proper clothes in your case. Your lawyer told me you wouldn't say one way or the other. We have a suit of clothes. I'll get those. We have those up here. We'll let you go to the library, jury room, put on your proper clothes. You don't have to. That's up to you.

"'Another reason I moved up here from my courtroom is that holding cell is wired for sound. If you participate—you don't have to—but you can hear everything going on from back there.

"'It's your case. I'm not trying to tell you what to do about it. I want to make sure that you know what's going on. If you want a trial, that's what we'll do right here this afternoon. We want to do everything right and proper and participate in it, being it's your case.

"'Do you understand where you are at?

"'What did you want to do?

"'THE DEFENDANT: I want a trial.

"'THE COURT: Did you want to be out here?

"'THE DEFENDANT: Yeah.

"'THE COURT: Do you want to put on your civilian clothes?

"'THE DEFENDANT: No.

"'THE COURT: Okay. Now, when the people see—there's been so much publicity on the orange jumpsuits—they'll know where you are at. I'll tell the jury that they may not consider that, that has nothing to do with anything. If they consider the fact that you are in that orange jumpsuit, they are acting improperly. I'll tell them that but it's whatever you want to do as far as dress.

"'THE DEFENDANT: I'm fine like this.

"'THE COURT: You want to wear your orange jumpsuit?

"'THE DEFENDANT: Yes.

"'THE COURT: I advise you again you don't have to. I advise you to please listen to your lawyer. She has your best interests at heart, no matter what you think right now. I understand this is a very tense moment. It's a rough case but your lawyer cares a

16

lot about helping people. I've seen her try other cases. She's a good lawyer. I wouldn't be afraid to have her represent me if I was in your shoes.

"'Do you have any questions whatsoever about what's going on? Do you understand what you are charged with?

"'THE DEFENDANT:  (Indicating affirmatively.)

"'THE COURT:  You are ready to go forward?

"'THE DEFENDANT:  (Indicating affirmatively.)'" 18 Kan. App. 2d at 73-74.

The Court of Appeals panel rejected the State's assertion that counsel could not invoke the right to self-representation on behalf of her client. "The [district] court understood that Lowe was asserting his right to self-representation and acted accordingly by proceeding to advise Lowe concerning the dangers inherent in self-representation." 18 Kan. App. 2d at 75. But then the district judge erred, telling Lowe that in order for him to represent himself, the judge would have to find "that it would not be of benefit to [Lowe] to have a lawyer in the case." 18 Kan. App. 2d at 75. In fact, no requirement for such a finding existed. The counseling on the benefits of legal representation that followed the judge's misstatement of the law was "consistent with the requirement that . . . a defendant must make a knowing and intelligent waiver of the right to counsel." 18 Kan. App. 2d at 76 (citing *Faretta*, 422 U.S. at 835; *State v. Cunningham*, 222 Kan. 704, 706-07, 567 P.2d 879 [1977]).

"However, when all the court's statements are reviewed, we cannot conclude Lowe made a knowing and intelligent decision regarding his right to represent himself. The court specifically stated that Lowe would be better off with counsel and, after explaining the pitfalls of self-representation, did not give Lowe the opportunity to state whether he wanted to represent himself. When the court's statements and actions are viewed *in toto*, there is the danger that Lowe understood not only that his request had been denied, but

17

also that there was no possibility the court would allow him to represent himself." *Lowe*, 18 Kan. App. 2d at 76.

The *Lowe* panel also quoted extensively from the Third Edition of the Kansas Criminal Law Handbook, edited by Judge Michael Barbara, for the information a prudent and careful judge should share with a defendant who asserts a right to represent himself or herself:

"'The judge should inform the defendant:

"'1. That at any time he or she could change his or her mind and retain counsel to represent him or her or petition the court for appointment of counsel to represent him or her [to] assist with his or her defense.

"'2. That no postponement would be permitted at any time during the proceeding for the reason that counsel was newly brought into the case.

"'3. That the court may and will terminate self-representation if the defendant deliberately engages in serious and obstructionist misconduct before the court or in any proceeding.

"'4. That the court [considers] it detrimental for the defendant not to accept or employ counsel to represent him or her.

"'5. That if the defendant is allowed to represent himself or herself, he or she must follow all legal rules applicable to the trial of any criminal action.

"'6. That there are numerous dangers and disadvantages to self-representation, including the following:

(a) The law provides for numerous pretrial motions available to the defendant, which are of a technical nature, the advantage of which the defendant would lose if allowed to represent himself or herself;

18

(b) The defendant's vocabulary may impede clear communication with the court and opposing counsel;

(c) Judges will not act on behalf of a defendant in asserting objections or making appropriate motions where ordinarily it is the duty of counsel to call such matters to the court's attention;

(d) The district attorney will not assist in the defense of the case;

(e) The rules of law are highly technical and will not be set aside in view of his or her status;

(f) A defendant may waive constitutional, statutory, and common law rights unknowingly;

(g) If the defendant is in custody, it is difficult for a defendant in custody to locate witnesses, interview them, prepare subpoenas, and have them served.

"'7. Of the maximum sentence for the offense . . . .

"'After receiving the defendant's responses, the court must make findings that the defendant understood the nature of the questions and statements of the court, and that he or she has made a knowing and intelligent waiver of counsel and a knowing and intelligent decision to represent himself or herself. The court should then allow the defendant to appear without counsel.

"'In some instances, the court may provide counsel for the defendant only for purposes of giving advice to the defendant, if the defendant expressly requests it. Counsel will sit with the defendant throughout the trial, but will not participate without the express request of the defendant or by order of the court, if the court first determines that the defendant is not competent nor qualified to continue with his or her own defense.'" 18 Kan. App. 2d at 76-77.

19

The handbook's advice to district judges faced with a criminal defendant's invocation of the right of self-representation is still sound today. See Cateforis, Kansas Criminal Law 11-9 (5th ed. 2016). The *Lowe* panel then completed its examination of the record before it:

"In the procedure described, the court is to make a finding that the defendant has made a knowing and intelligent waiver of counsel and a knowing and intelligent *decision* to proceed pro se. To make that finding, the court must at some point ask defendant, after all dangers and disadvantages of self-representation have been explained, whether defendant still wants to proceed pro se.

"In the present case, the court touched on areas relevant to informing Lowe of the dangers and disadvantages of self-representation but, following that explanation and before continuing with the trial, the court failed to ask Lowe if he still wanted to proceed pro se. Defendant was not afforded the opportunity to make the choice described in *Faretta* between proceeding with counsel or proceeding pro se.

"The State argues Lowe waived his right to represent himself by failing to reassert his right to self-representation and by allowing counsel to continue to represent him when the proceedings continued. In *McKaskle*, 465 U.S. at 183, the Supreme Court noted that '[o]nce a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.' In *McKaskle*, the defendant asserted his right to proceed pro se, but then requested counsel's help in questioning a witness. The defendant also acquiesced in some of the motions made by counsel while objecting to others.

"We find no waiver of the right to self-representation in the present case. Here, Lowe did not invite counsel's subsequent participation. At most, he allowed counsel to continue without reasserting his request to represent himself. After the court had explained some of the pitfalls of self-representation, Lowe was not given the opportunity to state whether he wanted to represent himself before counsel continued her

20

representation of Lowe. In this context, Lowe could have believed the court had denied his request and there was nothing more he could do. In *Orazio v. Dugger*, 876 F.2d 1508, 1512 (11th Cir. 1989), the court held that, once a request to proceed pro se has been conclusively denied, a defendant is not required to continually reassert the right to self-representation to avoid a waiver of the previously invoked right." 18 Kan. App. 2d at 77-78.

Like Vann, Bunyard filed multiple pro se motions during the pendency of his prosecution. Then—admittedly at the eleventh hour and only when prompted by what may have been intended as a rhetorical question by an all-but-fully-exasperated trial judge—Bunyard made more than one clear statement that he wished to proceed pro se. Despite this expressly "unequivocal" invocation of his right to self-representation, the district judge did not counsel Bunyard with a view toward ascertaining Bunyard's informed wishes. Rather, the judge put off addressing Bunyard's request, saying that he would not address it at all unless Bunyard filed a written motion. Bunyard had no practical way to file a written motion over the weekend, and the judge's demand for such a motion appeared to leave Bunyard, like Lowe, without recourse on the issue. In this context, Bunyard's silence on Monday when other pro se motions were heard was understandable. He had been left with a firm impression that he would not be permitted to represent himself. His failure to reassert his right to do so in such circumstances and his allowance of counsel's representation during the trial did not amount to an implicit decision not to pursue self-representation.

Bunyard's pretrial requests to represent himself were not, as the State argues, "simply based on his desire to ensure that certain arguments were advanced on his behalf." The record certainly demonstrates that he believed he had information and argument not being explained on Friday by his counsel, and that prompted his interruption of the proceedings. But, at that point, the judge presented Bunyard with a choice: Either allow counsel to proceed without interference or represent yourself. Bunyard chose the latter. And his choice did not change after his consultation with

21

counsel. Instead, he "unequivocally" repeated his choice on the record. At that point the law required that he be advised about the perils of proceeding pro se and then permitted to do so if he made a knowing and intelligent waiver of his right to counsel. Instead, the judge told Bunyard that the subject of self-representation would not be addressed on Friday and erected a writing requirement barrier that was virtually guaranteed to thwart Bunyard's express intention. The judge then ruled on the very motion on which Bunyard had tried to be heard, and he never took up the subject of self-representation again. Using the words of the Court of Appeals panel but reaching the opposite conclusion, we hold that regardless of whether there was a "deliberate undermining" of Bunyard's right to represent himself, there was certainly a "functional" undermining of that right. See 2016 WL 1719607, at *4.

The judge's error was structural, and it requires us to reverse all of Bunyard's convictions.

CONCLUSION

Because we conclude that the violation of defendant Josiah R. Bunyard's right to self-representation was structural error, we reverse the Court of Appeals decision and the judgment of the district court. This case is remanded to district court for further proceedings.