NOT DESIGNATED FOR PUBLICATION

No. 120,070

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

MATTHEW JB GILMORE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed February 7, 2020. Affirmed.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM: Matthew JB Gilmore appeals his convictions of one count of aggravated indecent liberties with a child and two counts of misdemeanor sexual battery. Gilmore's only claim on appeal is that the district court violated his Sixth Amendment right to represent himself in district court. But the record reflects that Gilmore did not clearly and unequivocally express his desire to represent himself, so we conclude the district court did not deny his constitutional right to self-representation.

1

On August 10, 2016, the State charged Gilmore with one count of aggravated indecent liberties with a child and two counts of sexual battery. Because Gilmore's only claim on appeal is that the district court violated his constitutional right to represent himself, we need not address the facts relevant to the charges. Gilmore at first requested and received court-appointed counsel. But at a hearing on November 3, 2016, Gilmore informed the district court that he anticipated retaining alternate counsel.

Gilmore ultimately retained counsel to represent him, and the case proceeded to a preliminary hearing on May 2, 2017. Thereafter, the retained defense counsel requested and received multiple continuances. At a hearing on January 5, 2018, the retained defense counsel informed the court she wished to withdraw. The following colloquy occurred:

"THE COURT: . . . So are you objecting to having [defense counsel] withdraw as your attorney?

"THE DEFENDANT: No, sir.

"THE COURT: She says you guys aren't communicating. So I'm going to let her withdraw. Are you going to hire counsel, new counsel?

"THE DEFENDANT: No, sir.

"THE COURT: You talked—no, sir? You're not going to get a new lawyer?

"THE DEFENDANT: No, sir.

"THE COURT: What are you going to do?

"THE DEFENDANT: Represent myself.

"THE COURT: You're going to represent yourself? What's the underlying charge here?

"[THE PROSECUTOR]: Aggravated indecent liberties.

"THE COURT: That's a Level 4 presumptive prison case, do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. Well, for now I'm going to let [defense counsel] withdraw.

"[DEFENSE COUNSEL]: Thank you, Judge.

"THE COURT: If you'll submit your order.

"[DEFENSE COUNSEL]: Yes, Judge. Thank you.

"THE COURT: All right. So now—are you working?

"THE DEFENDANT: Yes, sir. I'm working at a candy store.

"THE COURT: All right. So you have the money to hire a lawyer. You hired [former defense counsel] I take it?

"THE DEFENDANT: Yes, but right now I'm working at a temp service and now I'm getting paid weekly, but I don't have that much money.

"THE COURT: Let me give you an application for court-appointed counsel, all right? I want you to fill that out before you leave today. I'm going to schedule you to come back. If you qualify—are you asking for court-appointed counsel?

"THE DEFENDANT: No, sir.

"THE COURT: You want—no, you're not? And you're saying you're going to represent yourself?

"THE DEFENDANT: Yes, sir.

"THE COURT: How much education do you have?

"THE DEFENDANT: My GED.

"THE COURT: You have a GED so you didn't finish high school but you got your GED. You got no college, you got no legal training. You realize that the old saying that a lawyer—or a lawyer or a person who tries to represent themselves has a fool for a client? That's—I'm not trying to denigrate you in any way, but this is a presumptive prison charge against you and you should have legal counsel. *So do you want to apply for legal counsel and if you qualify, the Court can appoint [one for] you?*

"THE DEFENDANT: *I will go ahead and apply and if I do not like what the attorney is talking about, then I will go ahead and represent myself.* (Emphasis added.)

The district court continued the case for a scheduling conference the next week on January 12, 2018. In the meantime, Gilmore completed and signed a three-page financial affidavit for court-appointed counsel. The district court reappointed Zane Todd, who was Gilmore's original court-appointed attorney before he retained counsel. At the hearing on January 12, 2018, Todd announced his appearance on behalf of Gilmore.

3

The case ultimately proceeded to a bench trial on May 14, 2018. Gilmore never again raised the issue of self-representation, nor did he make any complaints about the performance of his court-appointed counsel. After hearing the evidence at the bench trial, the district court found Gilmore guilty as charged. On July 6, 2018, the district court sentenced Gilmore to 57 months' imprisonment with lifetime postrelease supervision. Gilmore timely appealed the district court's judgment.

ANALYSIS

Gilmore's sole issue on appeal is whether the district court violated his constitutional right to self-representation. He asserts that the district court erred by not properly considering his assertion that he wished to represent himself and by not allowing him to do so upon a proper waiver of his right to counsel. The State disagrees, arguing that Gilmore did not unequivocally assert his right to self-representation and that instead he agreed to accept appointed counsel after his discussion with the district court about the potential pitfalls of self-representation.

Kansas appellate courts exercise unlimited review over whether a district court denied a criminal defendant the constitutional right to self-representation. *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018). As to the defendant's right to self-representation in criminal proceedings, our Supreme Court recently stated:

> "The United States Supreme Court has held 'that the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right to self-representation.' '"The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."'
> "'A criminal defendant who before trial clearly and unequivocally expresses a wish to proceed pro se has the right to self-representation after a knowing and intelligent waiver of the right to counsel. A knowing and intelligent waiver requires that the defendant be

4

informed on the record of the dangers and disadvantages of self-representation. The choice is to be made "'with eyes open.'"

. . . .

"The Supreme Court of the United States has held that a failure to honor a criminal defendant's properly asserted right to self-representation is structural error. "'Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless.'" [Citations omitted.]" 307 Kan. at 470-71.

In Kansas, once a defendant unequivocally expresses the desire to proceed pro se, the law requires that the defendant be advised about the perils of proceeding pro se and that the defendant then be permitted to do so if he or she makes a knowing and intelligent waiver of the right to counsel. See *Bunyard*, 307 Kan. at 477. Our Supreme Court has recognized several examples of "information a prudent and careful judge should share with a defendant who asserts a right to represent himself or herself." 307 Kan. at 475, citing *State v. Lowe*, 18 Kan. App. 2d 72, 76-77, 847 P.2d 1334 (1993). These examples include the defendant's ability to reinvoke the right to counsel, but the fact that the trial will not be continued if the defendant changes his or her mind about proceeding pro se. *Bunyard*, 307 Kan. at 475-76. Likewise, in *Lowe*, this court found that when a defendant in a criminal case asserts a right to self-representation, the judge should inform the defendant "'[t]hat the court [considers] it detrimental for the defendant not to accept or employ counsel to represent him or her'" and "'[t]hat there are numerous dangers and disadvantages to self-representation.'" 18 Kan. App. 2d at 77.

Gilmore's appellate brief argues that he "clearly and unambiguously invoked his right to self-representation in this matter multiple time[s]." Gilmore then argues that after he invoked his right to self-representation, the district court's actions in response to his request deprived him of his right to represent himself. Gilmore asserts that the district court "order[ed] him to apply for a court appointed lawyer" and he acquiesced because he

felt there was no other choice. Gilmore contends that the "acquiescence violated [his] right to self-representation and his conviction and sentence must be reversed."

The State argues that Gilmore did not clearly and unequivocally express his wish to represent himself. Rather, the State contends that Gilmore at first said he wanted to represent himself, but "after speaking with [the district judge, Gilmore] accepted new counsel and made no further mention of wanting to represent himself." The State asserts that Gilmore's case is like *State v. Brown*, No. 109,814, 2015 WL 3555357 (Kan. App. 2015) (unpublished opinion), *rev. denied* 305 Kan. 1253 (2016). In that case, James L. Brown informed the district court mid-trial that "he wanted to proceed pro se because his attorney did not ask certain questions during cross-examination." 2015 WL 3555357, at *2. The district court denied the request. On appeal, Brown argued that the district court denied his constitutional right to self-representation. In addressing the claim, this court acknowledged that Brown had told the district court, "'I choose to represent myself.'" 2015 WL 3555357, at *3. But this court reasoned:

> "On its own, the statement appears to be unambiguous, but when viewed in context of why the statement was made, we see Brown's dissatisfaction was with his attorney's failure to ask questions Brown wanted asked. Again, the record before us reflects that Brown's complaint mellowed after the district court explained that an attorney controls the trial strategy and what questions to ask. Brown then said, "'That's all I ask, if he just look them [*sic*].'" Therefore, the record reflects that Brown's statement was not the unequivocal assertion of the right to self-representation now claimed by Brown in his counseled brief." 2015 WL 3555357, at *3.

We find the State's argument persuasive. At the hearing on January 5, 2018, Gilmore at first told the district court that he wanted to represent himself, and he repeated that assertion two more times. But after the district court advised Gilmore of some of the pitfalls of self-representation—as the court was required to do—Gilmore reconsidered his request. Contrary to Gilmore's claim that the district court ordered him to apply for an

6

appointed lawyer, the district court *asked* Gilmore, "So do you want to apply for legal counsel and if you qualify, the Court can appoint [one for] you?" Gilmore responded: "I will go ahead and apply and if I do not like what the attorney is talking about, then I will go ahead and represent myself." Gilmore went on to complete and sign a three-page financial affidavit for court-appointed counsel and he accepted the district court's appointment of Todd, who had represented Gilmore earlier in the case.

We conclude that Gilmore's statement that he would go ahead and fill out the application for court-appointed counsel to see what kind of attorney he received amounted to an equivocation of his request to proceed pro se. Gilmore decided to take a chance to see what kind of attorney he would receive and to see what kind of advice the attorney provided to him. He never again raised the issue of self-representation as his case proceeded to a bench trial and sentencing. Because the record reflects that Gilmore did not clearly and unequivocally express his wish to proceed pro se, we conclude the district court did not violate Gilmore's constitutional right to self-representation.

Affirmed.